# Richmond.

## CHILDREY AND ALS. V. RADY AND ALS.

### May 11th, 1883.

1. BOARD OF EDUCATION—*Origin—Powers.*—Constitution, art. viii, § 2, constitutes the governor, attorney-general and superintendent of public instruction, a board of education for the state. Act approved 11th July, 1870, (Code 1873, ch. 78, § 7, clause 4,) empowers this board to appoint and remove district school trustees, until otherwise provided, and applies as well to cities and towns as to counties.

2. IDEM—*School trustees—Counties—Cities and towns.*—By act approved 11th January, 1877, (Acts 1876-7, ch. 12, p. 9,) said clause 4 is repealed as to counties, and the power of the board of education to appoint and remove trustees therein, ceased after 1st July, 1877; but not so as to cities and towns; as to which the then law still prevails, and is found in Code 1873, ch. 79, § 7. By said § 7, the right of the board of education is recognized to appoint originally all the school trustees in cities. The city councils are authorized to supply any vacancies which may exist or occur in the school board, within sixty days after their occurrence, provided, however, the city council, as soon as practicable after the passage of this act (31st March, 1871,) shall designate which of the trustees then in office shall go out at the end of one, which at the end of two, and which at the end of three years. That section concludes thus: Should the city council in any case fail to act within the time prescribed (sixty days,) "it shall be the duty of the board of education to fill the vacancy or vacancies without further delay."

3. SCHOOL TRUSTEES—*Classification—Vacancies.*—Without the classification required, there could be no regular plan of succession to the trusteeships. At the end of three years from the original appointment, the terms of office of all the trustees expired, and it became the duty of the board of education to fill the vacancies, if the city council failed to act within the time prescribed.

4. IDEM—*Officers—Oath of office—Vacancies.*—School trustees are officers, and as such are embraced by constitution, art. iii, § 6, declaring that "all persons, before entering upon the discharge of any functions as officers of this state, must take and subscribe the following oath or affirmation." This oath is a condition precedent to the discharge of official duties as school trustees, and the failure to take this oath causes a vacancy, which, unless filled by the city council within the prescribed period, must be filled by the board of education.

5. IDEM—*Case at bar.*—The school system as regulated for cities, went into operation in the city of R., in May, 1871. The city council failed to classify the school trustees as required by law. The individual trustees failed to take and subscribe the required oath of office before entering on the discharge of their official duties. The board of education, February 17th, 1883, appointed C. and eight others school trustees for said city, "to fill vacancies caused by trustees ·not qualifying." Duly commissioned they qualified and organized, and demanded the records, &c. of the public free schools of said city, from R. and eight others, who were then acting as such school trustees, and who refused to surrender. Thereupon C. and others petitioned for a *mandamus.* The rule *nisi* being served on R. and others, they made return, claiming to be the rightful trustees, and denying that their offices were vacant; that the oath of office was required of them; and that the failure to take it, caused such a vacancy as the board of education could fill. Petitioners demurred to this return.

HELD:

1. School trustees are required to take and subscribe the oath of office as a condition precedent to entering on the discharge of their official duties, and the respondents failure to take it within the prescribed time, caused vacancies in their trusteeships. The city council, failing to act within the prescribed time, it became the duty of the board of education to appoint, and having appointed the petitioners they constitute the lawful board of school trustees for said city.

2. The demurrer to the return must be sustained, and the writ of *mandamus* awarded.

Upon petition for a writ of *mandamus* filed in April, 1883, by John H. Childrey and eight others, appointees of the board of education for the state, as the school trustees for the city of Richmond, against Charles P. Rady and eight others acting school trustees for the said city.

The syllabus indicates and the opinion sufficiently states the

facts of the case and the positions taken by the petitioners and by the respondents.

*F. S. Blair, Attorney-General,* for the petitioners.

*W. W.,* and *B. T. Crump,* for the respondents.

RICHARDSON, J., delivered the opinion of the court.

The petitioners, John H. Childrey, Rowland Hill, Jefferson Powers, John W. Fisher, Richard Forrester, V. A. Favier, Henry Hudnall, R. A. Paul, and J. V. Reddy, of the city of Richmond, claim that they were, on the 17th day of February, 1883, duly appointed by the board of education for the state of Virginia school trustees for the city of Richmond, and that they therefore constitute properly the board of school trustees for said city. And said petitioners assert that upon their said appointment they respectively took the oath of office required by the constitution and laws of Virginia, and were thus duly qualified and ready to enter upon the discharge of their official duties as such trustees. But they say they are prevented from exercising the functions of their said offices because they find the respondents, Charles P. Rady, Wm. H. Williams, A. W. Weddell, R. G. Cabell, A. R. Courtney, R. W. Powers, M. L. Straus, S. P. Moore, and W. R. Bowie in possession of said positions of school trustees for said city, and performing the duties and exercising the functions thereof, contrary to law and to the exclusion therefrom of said petitioners.

The question now to be determined by this court arises upon the application of said petitioners for a writ of *mandamus* to compel delivery by the respondents to the petitioners of the said offices, together with all books, records, papers, and other property belonging to the public free schools of the city of Richmond.

The petition of the applicants, together with certain exhibits

filed as part thereof, in addition to the circumstances already detailed, shows that at a meeting of the state board of education, composed, as required by the constitution, of the governor, the attorney-general, and the superintendent of public instruction, held at the office of said board on the 3d day of January, 1883, the following order was passed and a copy thereof addressed to the respondents:

"This board being put in possession of the fact that by failure to qualify within the time prescribed by law, and by failure of the city council of Richmond to fill vacancies within the time allowed to them by law, your places doubtless are vacant. You are hereby directed to take no further steps affecting the school system of this city until the state board of education shall have decided the question."

It appears further, that the information upon which the board of education acted, as just stated, was derived from E. M. Garnett, superintendent of schools for the city of Richmond. In a communication from that officer to the attorney-general, dated December 29, 1882, in response, it seems, to a previous letter from the latter to the former, he, among other things, says: "When I was appointed superintendent of schools in this city the school board was composed of the following trustees: First District—Charles P. Rady, Dr. Scott, and A. R. Courtney. Second District—Anthony M. Keiley, Judge B. R. Wellford, and R. W. Powers. Third District—M. L. Straus, Dr. S. P. Moore, and W. C. Knight—*none of whom had ever taken the oath of office.* All of them had been elected for *months and years* before I came into office. In July, 1882, Dr. Scott resigned and Wm. H. Williams was elected in his place."

It further appears, that on the 1st day of March, 1883, by a communication addressed to J. H. Peay, Jr., secretary and supervisor of school property in the city of Richmond, the petitioners gave notice of their appointment and qualification according to law as school trustees for said city, and claimed that they were entitled to exercise all the rights and privileges of such

trusteeship, and demanded that all the books, records, papers, and other property belonging to the public free schools in said city be produced and surrendered to them.

To this demand response was made refusing compliance (1), as alleged, for want of official notification of the appointment of petitioners as a board of trustees; and (2) asserting that if so notified he, the said Peay, would still recognize, not the petitioners, but the school board then acting and appointed by the city council, until the question should be settled by a court of·competent jurisdiction; and declining to recognize any board of trustees other than the board that appointed him. Thereupon the rule *nisi* was upon application of the petitioners awarded, to which the respondents make return and say:

I. That they and each of them constitute, and are, and were at the date of the alleged appointment of said petitioners, the legal and rightful school trustees, holding their places under and by virtue of appointments duly made by the council of the city of Richmond, according to law; which appointments so made they say were duly accepted by them, and each of them, who duly qualified thereto, as, they say, in their said return will appear. They deny the authority of the board of education under whose appointment the petitioners claim. They deny that there was or has been any such vacancy in the said school board of trustees as authorized said board to supply the same; and they say if such vacancies did exist as are claimed when said board appointed, the same could only be filled by the city council, and that it was the duty of the board of education to inform the city council of such vacancies in order that said council might fill the same.

II. The respondents deny that an oath of office was peremptorily required by law of them as trustees as a condition precedent to the discharge of their duties, and that a failure to take such oath caused a vacancy which the board of education could fill.

III. In the third place the respondents say they were, and

each of them was, duly appointed by the said city council, and that they accepted and qualified under said appointment. That the city of Richmond is and has been by law and by ordinance, regularly since May 15, 1871, proceeding in conformity with the law of the state governing and directing the school system established for cities March 31st, 1871. That when the said law of 1871 took effect the said city had a school system and a school board of its own; that the members of said school board were by the city council, as the statute of the state authorized, appointed to the new school board of trustees and assigned to the legal districts into which the city had been divided, and for specific terms of office, as prescribed by law, in pursuance of the statute of 1871; and they proceeded without further or other qualification to act as school trustees under the state system of education, so that in fact the state, as by the statute provided, did adopt the school board of said city as the school trustees of the state, and exacted of them no further or other qualification than that which they possessed as city appointees.

The case has thus been fully stated that there may be no misapprehension of the facts or principles which control the court in the conclusion arrived at. It is true the respondents, under the third and last head above referred to, give some details touching the manner and time at which certain persons of their number were appointed and the time and manner of their qualification, and these may hereinafter be referred to; but, for all practical purposes, what has been stated amounts to the contention in full, as well on the part of the petitioners as the respondents.

To the return of the respondents the petitioners demurred, and the respondents joining therein, the case was argued upon the demurrer only, and must so be determined.

The question thus raised and now to be decided, depends upon no difficult or abtruse propositions of law. It is plain and simple, depending solely upon the letter of the law as laid down

in our constitution and certain statutes enacted in pursuance thereof. By these we must be guided in our consideration of the case. The subject of free school education is one of absorbing general interest. It has, perhaps, more than any one question of public concern engaged the hearts and minds of patriots and statesmen, who are revered in memory, and whose lives and deeds are worthy of emulation by the American people. The vast importance of the subject engaged the solemn deliberations of the framers of our organic law, and called forth commands in its behalf plainly foreshadowing and determining a line of legislative policy deemed highly essential to the welfare of the state and not to be departed from. Hence the eighth article of our constitution is devoted almost exclusively to the subject.

The first section of that article commands the general assembly within thirty days after its organization under the constitution, and every fourth year thereafter, to elect a state superintendent of public instruction, who shall have the general supervision of the public free school interests of the state. And the officer thus required to be chosen, together with the governor and attorney-general of the commonwealth, are constituted by the second section of said article a board of education for the state, upon whom large powers are required to be conferred by law. The third section made it incumbent upon the general assembly at its first session under the constitution to provide by law a uniform system of public free schools, and for its gradual, equal and free introduction into all the counties of the state.

In prompt obedience to this mandate of the constitution the general assembly at its first session thereunder (1869–'70) passed an act to inaugurate the educational system; the first section of which, in the language of the constitution, declares "there shall be established and maintained in this state a uniform system of public free schools." Code 1873, chapter 78, section 1. In further obedience to the constitutional requirement the second section of said act provides that the public free school system

shall be administered by a board of education, a superintendent of public instruction, county superintendents of schools, and district school trustees. Upon each of these authorities, charged with the administration of the school system, most important powers are conferred and duties imposed. These duties need not here be carefully enumerated. Among the duties imposed upon the board of education is that conferred by the fourth clause of the seventh section, of appointing and removing district school trustees until otherwise provided. This clause has since been repealed, as will be hereinafter shown; and in that connection it will be important to note to what extent, if any, for the purposes of this case its repeal has any operative effect.

The very title as well as the general scope of the act of 1869–'70, the same as chapter seventy-eight of the Code of 1873, make it abundantly clear that that act was intended to embrace the cities and towns of the state as well as the counties. But said act although so intended was in some respects imperfect, and consequently inefficient for the proper conduct and government of the school system in the cities. This being the case the general assembly at its succeeding session of 1870–'71 passed an additional act for the regulation and control of the public free schools in the cities and towns of the commonwealth. Code 1873, chapter seventy-nine. The first section of this act clearly shows that the two acts—chapters seventy-eight and seventy-nine of the Code—together were intended to comprehend the general law affecting the government of the public free school system, and applicable to counties as well as certain cities and towns mentioned in the said first section of the act last referred to, except as provided in subsequent sections of said last-named act. The two acts standing thus together and constituting the general school law, it is important to see for the purposes of this case how far said acts, or either of them, have been changed by subsequent acts repealing or amending any portion of either, touching the powers and duties of said board of education in respect to the appointment of school trustees.

Reference has already been made to the fact that by the fourth clause of the seventh section of chapter seventy-eight of the Code of 1873, it was made the duty of the board of education to appoint and remove district school trustees until otherwise provided. By an act passed by the general assembly at its session 1876–'77, entitled "an act to provide for the appointment and removal of district school trustees, and to repeal the fourth clause of the seventh section of chapter seventy-eight of the Code of 1873," it was provided that "on and after the first day of July, 1877, vacancies existing or occurring in district boards of school trustees shall be filled by the joint action of the county superintendents of schools, the county judge and the attorney for the commonwealth in each county," who are by said act created for that purpose and designated as the school trustee electoral board. The act further provides that nothing therein contained shall be construed to give any authority or power to said electoral board to interfere in any way with the *appointment* as heretofore of school trustees by municipal councils, or to disturb in any way the present law bearing on the action of said municipal councils in the premises. Acts 1876–'77, chapter twelve, page nine. The provisions of this first section are clear and specific. The act in terms applies only to counties. It creates a board for each county and charges that board with the duties in the particular named theretofore imposed by the said fourth clause of section seven of chapter seventy-eight upon the board of education. And after, in the second, third, fourth and fifth sections, providing for the organization and general conduct of said county board, by the sixth and last section repeals the said fourth clause of section seven, chapter seventy-eight. In this way it was that it became *otherwise provided,* as to the appointment and removal of district school trustees, than it had theretofore been under said fourth clause; and, in the counties, the functions of the board of education in that respect ceased, and the county boards thus created for the purpose succeeded to the rights and duties as to the appointment and removal of school

trustees in the counties before then exercised and performed by
the board of education. But said act of 1876–'77 in no way
affected, or by any means impaired the rights, or removed the
duties imposed by law on the board of education in respect to
the appointment of school trustees in the cities. On the con-
trary, it has already been shown that said act expressly excludes
from its operation the rights in the premises exercised by city or
municipal councils as provided by existing laws.

It must be borne in mind that the first section of the said act
of 1876–'77 is not only limited in terms to counties, but the
proviso therein, before referred to, expressly forbids said county
electoral board from disturbing in any way the *present law*
bearing on the action of municipal councils respecting the school
trustees in the cities. It is important, therefore, to enquire what
is the "present law" bearing on the action of municipal councils
in regard to the question under consideration, as stated in said
proviso? Upon this question the whole case mainly hinges.
Its answer, full and complete in every essential, is found in
the seventh section of chapter seventy-nine of the Code of 1873.
This section reads: "School trustees already in office in cities,
by appointment of the board of education, and members of any
city board of education created by the municipal authorities
thereof, shall constitute the city school board *so far as the num-
ber and locality* of these officers respectively meet the conditions
prescribed in this act; and any deficiencies which may exist in
the beginning, and all vacancies which may afterwards occur in
the school board, may be supplied at any time within sixty days
after their occurrence by appointment made by the city council:
provided, however, that as soon as may be after the passage of
this act, the city councils of said city shall designate which of
the trustees then in office shall go out of office at the end of one
year, which at the end of two, and which at the end of three
years." And said section then concludes with this express pro-
vision: "Should the city council in any case fail to act within

the time prescribed (sixty days) it shall be the duty of the board of education to fill the vacancy or vacancies without further delay." This is the law, and all the law, bearing directly upon the action of city councils in connection with the appointment of city school trustees. It is a plain recognition of the right (taking all the statutes together) of the board of education now, as in the inception of the school system, to appoint originally all the trustees for cities; and the right, and only the right, of the city council to supply vacancies as they may occur or deficiencies existing in the beginning—that is, from the time chapter seventy-nine, regulating the school system in the cities, went into effect. This is apparent, and it is the utmost limit to which the right of action on the part of the city council can be pushed without a flagrant disregard of the plain provisions of the statute. If it were not so, then it would be in the power of a negligent or wilful city council to defeat the school system by neglecting to fill vacancies within the prescribed time. It was never intended by the framers of the law that the public educational interests of the state should be exposed to such a calamity. On the contrary, every reasonable precaution has been taken by the law-makers to prevent such a result.

The act of 1869–'70 (chapter seventy-eight of the Code) was the first act upon the subject of public schools. Under its operation and by virtue of the fourth clause of the seventh section thereof it was the duty of the board of education to appoint and remove district school trustees as well in the cities as in the counties. The language is "district school trustees," and the law, until otherwise properly arranged, made each ward in a city a school district. This was only so expressly provided by the act of 1870–71; but the board of education was charged both by that and the preceding act with important duties as to the whole state, not excluding the cities. And the first act (1869–70), though intended to embrace the school interests in cities as well as counties, was, in some respects, defective, wanting in special

adaptability to the cities; so that the board of education in proceeding to inaugurate the school system thereunder in the cities, doubtless, in the first instance, appointed all the trustees for the cities, as we must presume, for unquestionably there was then no power of appointment of any sort in the city council; then the power to appoint and remove was vested in the board of education only. The fair presumption, however, is that the board of education in the then imperfect state of the school law after, in the beginning, appointing city school boards, conceded to the local authorities, the city councils, the right to supply vacancies as they should occur, or such other participation as to the board of education may have seemed just in the then imperfect state of the school system. And by the time chapter seventy-nine was passed doubtless many of the original appointments made by the board of education had become vacant, or the vacancies supplied by the city councils by permission as aforesaid, being of doubtful or no authority, in a spirit of conciliation the legislature recognized the situation and inserted in said seventh section of chapter seventy-nine the provision authorizing deficiencies in the beginning and after occurring vacancies to be supplied by appointments of the city council, and retaining such as had already been so appointed; but expressly limiting the right thus conferred to a period within sixty days; and adopting such appointments as had theretofore been made by such councils only so far as the number and locality of such persons should meet the requirements of the act of 1870–71. Bear in mind, whether the city board of trustees, not exceeding three for each ward or district, should happen all to have been appointed originally by the board of education or made up in part of appointees by the city council to supply vacancies, in either event they would constitute the city board of school trustees, and as such officers respectively of the state of Virginia, in the exercise of important public trust, and in every respect measured by and amenable to the law as other officers.

The law regulating the school system is kindly and concilia-

tory in a high degree. So tenderly does it consider the known preference for local control that it confers upon the city government the right of designating which of the board of school trustees shall go out of office at the end of one year, which at the end of two, and which at the end of three years; as well as the right of filling all vacancies if done within the time prescribed. In case of promptness in discharge of duty, in the short period of three years each city board of school trustees would become the appointees of the local authorities, as one-third of new element would thus come in with each succeeding year. If, on the other hand, the local authorities thus accredited neglect a plain duty, to the necessary detriment of a great public interest, they cannot justly complain that authority to act departs from them and rests in hands confided in by the makers of the law. Hence the provision of the statute requiring the board of education without further delay to fill the vacancy or vacancies in any case in which the city council has failed to act within the prescribed time.

School trustees are persons; they are officers, recognized as such by the law of the land, by the law which creates the office, prescribes the qualification essential to constitute the officer, and imposes penalties for failure of duty. Being persons and officers, they come within the sixth section of the third article of the constitution which declares that "all persons, before entering upon the discharge of any function as officers of this state, must take and subscribe the following oath or affirmation." * * *

This applies to the office in question. Then we have a statute imposing a penalty for acting in any such office or post before taking the prescribed oath. Such is the law affecting this case; and being unrepealed or or in any respect altered as it bears thereon, and being of clear, unequivocal import and mandatory in its character, we can only construe it by what it says. Such being the law, let us look to the case as stated by the respondents in their return, and see if it meets the demands of the law. Briefly summed up it is this: They say they were duly

appointed by the city council of Richmond, accepted their appointments and duly qualified, as they say in their said return appears. They deny the authority of the board of education to appoint the petitioners, or that there were any such vacancies as could be filled by said board. Then they deny that the oath of office was peremptorily required by law of them as trustees as a condition precedent to the discharge of the duties of trustees, or that the failure to take such oath caused a vacancy which could be filled by such board of education. In view of the law, and for reasons already stated, it is manifest that this return thus far utterly fails to meet the case made by the petitioners; unless we take the general, unsupported statement that the respondents were duly appointed and qualified as conclusive; when, in fact, they were not so appointed and qualified, as appears by the record.

But further on in their return the respondents themselves so state their case as to leave no difficulty. They report in general terms what has been stated as to their appointment and qualification, and say "that when the law of 1871 took effect the said city had a school system and a school board of its own; that the members of said school board were, by the city council, as the statute of the state authorized, appointed to the new school board of trustees and assigned to the legal districts into which the city had been divided, and for specified terms of office as provided by law in pursuance of the statute of 1871, and they proceeded *without further or other qualification* to act as school trustees under the state system of education, so that, in fact, the state, as by the statute provided, did adopt the school board of said city as the school trustees of the state, and exacted of them no further or other qualification than that which they possessed *as city appointees."* This is plainly in substance but a confession of the case made by the petitioners and an effort to avoid its force upon the bare assumption that the case as stated by them is sanctioned by said act of 1870-'71; when, in point of fact, that act gives no color to their claim. We are unable to

discover any lawful authority by which the city of Richmond could have a school system, and a board of school trustees of its own, as contended by counsel for respondents. Nor have we been able to discover any provision of law by which a board of trustees thus created could be adopted as state school trustees. It is certainly not to be found in the said seventh section of chapter seventy-nine. On the contrary, that section expressly requires a city board to be composed of trustees then in office by appointment of the board of education and *members* (mark the language) of any city board of education created by the municipal authorities thereof, so far as the number and locality of same shall meet the condition prescribed in said act. Now, the "*members* created by the municipal authorities" could only be such persons as had been appointed by the city authorities, by concession of the board of education, to fill vacancies in the board of trustees originally appointed by the board of education.

The section of the law just referred to, in a spirit of conciliation and harmony, after so providing for the composition of the city boards of trustees goes on and requires other things to be done as essential to the safety and successful working of the school system.

First. It requires the city council to designate which of the board of trustees (constituted as above stated) should go out at the end of one, which at the end of two, and which at the end of three years; thus securing the healthful infusion of one-third of new element with each year. And second. It provided that all vacancies thereafter occurring "may be supplied at any time within sixty days after their occurrence by appointment made by the city council," etc. And then said section concludes with this peremptory language: "Should the city council in any case fail to act within the time prescribed it shall be the duty of the board of education to fill the vacancy or vacancies without further delay." Language could not be plainer or more imperative. Precedent to the discharge of the duties above enumerated

is the emphatic constitutional requirement of the oath of office. It does not appear that either of these requirements has been complied with. Taking what the respondents say in their return, together with the exhibits filed as part thereof, we must presume that all have been neglected.

It appears that the school system as regulated for cities went into operation in the city of Richmond about the month of May, 1871. In all the period from that time until July, 1882, near twelve years, a period nearly equal to four full official terms of three years each, it does not appear by the record that the school board, as claimed by the respondents, had any moment of legal existence. Without the designation required there could be no regular and uniform plan of succession to the trusteeships respectively; there could, in fact, in the neglect of this essential feature, be only confusion and inefficiency. At the end of three years from the original appointment the terms of office of all expired. The office of each trustee was vacant and it became the duty of the board of education to act, the city council having failed in each case to act within the prescribed time. Without the punctual performance of this duty by the council there could be no regular predecessor or successor in any existence. And then in advance of the performance of any of these the constitution peremptorily requires the oath of office. The duty of taking the oath as a prerequisite is imposed in terms that admit of no doubt. It is required of every officer. It applies to all; and it is made penal by statute to exercise any function of office without first taking and subscribing the oath. Oaths and bonds (when bond is required) constitute the only guarantees of official fidelity; the one appealing to the conscience and the other to the purse. It is therefore the unavoidable conclusion, unless both the spirit and the letter of the law are to be construed away, that no one of the respondents is a legally constituted school trustee for said city, nor do they all together constitute a legal board of school trustees. It is unnecessary to further extend this view.

We are of opinion that upon the return alone the case is with the petitioners. Under the circumstances, each of said trusteeships being vacant, it was clearly the duty of the board of education to appoint, and having appointed the petitioners they constitute the legal board of trustees for said city ,and are entitled to exercise their offices, respectively, as such. We are of opinion, moreover, that this case in most if not all material respects is controlled by the case of *Kilpatrick and als.* v. *Smith and als.,* recently decided by this court. *Ante,* p. 347. Most of the authorities relied on by respondents here are examined and commented on in that case. As to the case of *Monteith* v. *The Commonwealth,* 15 Gratt. 172, much relied on by counsel for respondents, it is only necessary to say that was a case in which a sheriff who had taken office irregularly was, together with his sureties, pressed for money collected under color of office; in which case the sureties sought exemption by reason of said irregularities; and, therefore, wholly different from this case.

For these reasons the demurrer of the petitioners to the return must be sustained, the writ of peremptory *mandamus* awarded according to the prayer of the petition, commanding the respondents, and each one of them to abstain from further acting, either individually or collectively, as school trustees for the city of Richmond, and to surrender to the petitioners said offices, and all records, books, papers and other property belonging to the public free schools of said city now in their possession or under their control.

MANDAMUS AWARDED.