[Sac. No. 823.   In Bank. — June 7, 1901.]

WILLIAM H. BRADLEY, Appellant, v. GEORGE H. CLARK, Respondent.

PURITY OF ELECTIONS ACT — PRESCRIBED OATH UNCONSTITUTIONAL. — The oath prescribed in the Purity of Elections Act (Stats. 1893, p. 15), in so far as required of a successful candidate for office, as a prerequisite of his right to take office, is in violation of section 3 of article XX of the state constitution, making the oath there required exclusive of any other oath, declaration, or test, as a qualification for any office or public trust; and the requirement of the additional or different oath, in such case, is void.

ID. — VALIDITY OF OTHER REQUIREMENTS — FORFEITURE OF OFFICE. — The legislature has the power to require an elected officer to make the statement prescribed therein, and to provide that for a failure to do so he should forfeit his office or his right to office.

ID. — CONTEST OF ELECTION — STATEMENT OF EXPENDITURES — CROSS-EXAMINATION — OTHER EXPENDITURES. — Upon the contest of an election, under the Purity of Elections Law, where the defendant had testified that an item designated as "Incidentals and Sundries" was all for sums less than five dollars, and that the vouchers had not been preserved, and that no money was paid for hacks or for signs, he cannot be questioned, upon cross-examination, about other alleged illegal expenditures; but such questions could only be asked by making the defendant a witness in chief for the contestant.

ID. — OFFENDING WITNESS NOT PRIVILEGED. — A witness called to prove the illegal giving by the defendant, to the witness, of money received and used by him to aid and secure the defendant's election,

---

[1] 23 Am. Rep. 305.                    [2] 15 Am. St. Rep. 174.

and the illegal expenditure by the defendant of money paid to the witness, and other persons, in excess of the amount which he could lawfully expend, and an illegal promise by defendant to give to the witness the patronage of the office to which he was elected, cannot claim immunity from any questions relating thereto which would tend to criminate or degrade him, the witness being fully protected by the provisions of section 32 of the Purity of Elections Act.

ID. — PRELIMINARY QUESTION. — No privilege can be claimed for an answer to a preliminary question which can be answered by " yes " or " no."

ID. — NON-OFFENDING WITNESS. — In so far as the witness himself was non-offending, he could not claim any privilege from testifying to offenses against the Purity of Elections Act committed by the defendant.

ID. — PROOF OF EXCESS OF EXPENDITURES — RECEIPT OF EXCESS NOT AN OFFENSE. — No law imposes upon the recipient of the candidate's money the duty of inquiring how much the candidate has expended or proposes to expend to secure his election; and a witness called to prove money paid to himself, which was not of itself excessive in amount, has no claim of privilege to show that the sum so paid, taken in connection with other sums proved, showed an excess of expenditure.

ID. — PROMISE OF PATRONAGE — PROMISEE NOT AN OFFENDER. — A promise of patronage of the office, by a successful candidate, is an offense for which he may forfeit the office; but the promisee is not made by the act an offender, even though he may act upon the promise, and promote the election of the candidate.

ID. — QUESTION OF CRIMINATION — IMMUNITY — PROVINCE OF TRIAL COURT. — Both the immunity conferred upon the witness by the act, and the province of the trial court, and not of the witness, to determine to its own satisfaction the question as to whether the evidence sought tends to criminate or degrade him, constitute it error for the trial court to exclude answers upon the naked declaration of the witness that questions asked to prove offenses by the defendant would tend to criminate or degrade the witness. That question cannot be determined in this court for the first time.

ID. — DECLARATION OF ATTORNEY IN BRIEF — CONCESSION — DUTY OF APPELLATE COURT. — A declaration of the attorney for the appellant, in his brief, that the answers to certain questions would show an offense by the witness, within the purview of the act, does not amount to a concession or admission that the witness was entitled to claim a privilege of immunity from answer; but if it were so, it could not affect the duty of this court to declare the law as it is.

APPEAL from a judgment of the Superior Court of Sacramento County.   Matt. F. Johnson, Judge.

The facts are stated in the opinion of the court.

A. L. Shinn, and William Henley, for Appellant.

The law prohibits excessive or illegal expenditures by or on behalf of the candidate, and the defendant is responsible for expenditures made through his agent, or friends acting for him. (*State* v. *Good*, 15 O. C. C. Rep. 386; *Pritchard* v. *Walker*, Hodgin's Election Cases, 560; *North Perth Case*, 20 Can. S. C. 331.) The defendant was entitled to the immunity given by section 321 of the Purity of Elections Act, and the fact that this is a civil case, under section 42, can make no difference. The question relates to the privilege of the witness to be protected as an offender under the act. (*Ex parte Cohen*, 104 Cal. 524.[1]) The legislature had authority to deprive the candidate of his office for improper practices. (*Mason* v. *State*, 58 Ohio St. 30; *State* v. *Good*, 15 O. C. C. Rep. 386.)

C. T. Jones, Peter J. Shields, and Hiram W. Johnson, for Respondent.

The witness Cavanaugh was entitled to claim his general privilege in this proceeding, which was a civil contest, under section 12 of the Purity of Elections Act. (*People* v. *Sternberg*, 111 Cal. 7.) Section 32 and the sections therein referred to relate to criminal offenses and prosecutions therefor; and section 12 is not referred to in section 32. *Ex parte Cohen*, 104 Cal. 525,[1] was a case of criminal prosecution, and is not in point, except upon a similar state of facts. (*People* v. *Winkler*, 9 Cal. 234; *Pearce* v. *Boggs*, 99 Cal. 340; *Pasadena* v. *Stimson*, 91 Cal. 238; *Norris* v. *Moody*, 84 Cal. 143.) Section 32 is not as broad as the constitutional grant of privilege, and cannot abrogate that privilege. (*Counselman* v. *Hitchcock*, 142 U. S. 547; *United States* v. *Bell*, 81 Fed. Rep. 830.) Sections 3 and 4 of the Purity of Elections Act are unconstitutional, as providing for a test or oath, as a qualification for office, additional to and different from that exclusively prescribed by the constitution. (Const., art. XX, sec. 3; *Cohen* v. *Wright*, 22 Cal. 309.)

HENSHAW, J.—This is an action instituted by an elector of the city of Sacramento, under the provisions of the Purity of Elections Act (Stats. 1893, p. 15), contesting the right of the defendant, mayor elect of the city, to his office. After trial,

_____
[1] 43 Am. St. Rep. 127.

judgment passed for the defendant, and from that judgment contestant appeals, the evidence being brought up for review by bill of exceptions.

It is charged by contestant that, in violation of the Purity of Elections Act, the defendant was guilty of certain improper practices, in that,—1. He did not file a statement of his election expenses, supported by his affidavit, as required by law; 2. That the statement filed was false in fact; 3. That money was illegally expended by him in aid of his election; 4. That he expended a sum of money, to secure his election, in excess of the maximum amount allowed by law; 5. That, to secure his election, he promised to bestow upon an elector of the city of Sacramento one ninth of the official patronage of the office of mayor of the city, in the event of his election.

Section 3 of the Purity of Elections Act provides that "every candidate who is voted for at any public election held within the state shall, within fifteen days after the day of holding such election, file, as hereinafter provided, an itemized statement, showing in detail all moneys paid, loaned," etc.  "There shall be attached to such statement an affidavit, subscribed and sworn to by such candidate, which must be substantially in the following form:—

"State of California, County of ——, ss.

"I, [name,] having been a candidate for the office of ——, at the election held in the county, city and county, city, or other division, state of California, on the —— day of ——, 18—, do solemnly swear that I have paid the sum of $—— for my expenses at the said election, and no more, and that, except as aforesaid, I have not, nor to the best of my knowledge and belief has any person, club, society, or association on my behalf, directly or indirectly, made any payment, or given, promised, or offered any reward, office, employment, or valuable consideration, or incurred any liability on account of or in respect of the conduct or management of the said election, and except such moneys as may have been paid to or expended by the committee selected as prescribed by the act of the legislature of this state, approved [date of this act].  And I further solemnly swear that, except as aforesaid, no money, security, or equivalent for money, has to my knowledge or belief been paid, advanced, given, or deposited by any one, to or in the hands of myself, or any other person, for the purpose of defraying any expenses incurred on my behalf, or in aid of my

election, or on account of or in respect of the conduct or management of the said election. And I further solemnly swear that I will not at any future time make, or be a party to the making or giving, of any payment, reward, office, employment, or valuable consideration for the purpose of defraying any such expenses as last mentioned, or provide or be a party to the providing of any money, security, or equivalent for money, for the purpose of defraying any such expenses."

By section 4 of the act it is provided: "Any candidate for a public office who shall refuse or neglect to file, or who makes a false statement of moneys received or expended, as prescribed by section 3 of this act, shall, in addition to the punishment for such offense prescribed by the laws of this state, forfeit any office to which he may have been elected at the election with reference to which the statement is required to be made. If a candidate elected to a public office refuses or neglects to file the statement prescribed by section 3 of this act, no certificate of election shall be issued to him, neither shall any official bond presented or offered by him be approved, and the incumbent of the office, unless he is himself a defaulting candidate, must not surrender or deliver up said office, but shall continue to discharge the duties and shall receive the emoluments thereof."

Respondent contends that these provisions, or at least such of them as require a successful candidate to support his statement by his oath as a prerequisite to his right to take office, are violative of the constitution of the state, and therefore void. From this conclusion we think there can be no escape. Section 3 of article XX of our state constitution declares: "Members of the legislature, and all officers, executive and judicial, except such inferior officers as may be by law exempted, shall, before they enter upon the duties of their respective offices, take and subscribe the following oath or affirmation: 'I do solemnly swear [or affirm, as the case may be] that I will support the constitution of the United States and the constitution of the state of California, and that I will faithfully discharge the duties of the office of —— according to the best of my ability,' and no other oath, declaration, or test shall be required as a qualification for any office or public trust." The constitution itself speaks of this prescribed oath as a "qualification" for an office. Equally is the oath required to be taken by the successful candidate a qualification

for office, for the very provision of the act is, that, for his refusal or neglect in this regard, or for the making of a false statement, he shall be deprived of his office, and shall forfeit any office to which he may have been elected.

In *State* v. *Bemenderfer*, 96 Ind. 376, it is said: "The term 'qualify,' as used in the statute, does not mean possessed of the necessary political, mental, and moral endowments, but means the acts performed after election, as taking the official oath and executing an official bond. . . . 'Eligible' means capable of being chosen, while 'qualify' means the performance of the acts which the person chosen is required to perform before he can enter into office. . . . Abbott, in defining the word 'qualify,' says it means to take the oath and give the bond required by law from an administrator, executor, public officer, or the like, before he may enter into the discharge of his duties."

Had our constitution merely declared, as some do, that no other "test" than the one prescribed should be exacted of an officer elect, it might then be argued with some force that it had reference to such tests, in their nature religious, as those required by the act of Charles II, directed against Roman Catholics and dissenters, which remained a blot upon the English statute-books until 1828. But the constitution has designedly said, not alone that no other test should be required, but that no other "oath or declaration" should be exacted. This language leaves as the only matter for determination the single question, whether this act does impose an oath or test substantially differing from that prescribed by the constitution. (*Cohen* v. *Wright*, 22 Cal. 294.) That it does prescribe a substantially different oath, in addition to that made exclusive by the language of the constitution, the very reading of the section makes manifest. But, in holding that the legislature may not prescribe this additional oath upon a successful candidate as a prerequisite to his right to take office, and as an additional qualification to those enunciated by the constitution, we do not mean to be understood as saying that the legislature may not with propriety provide that a candidate shall forfeit his office for the doing of any of the inhibited acts, or for the failure to do any of the required acts set forth in the Purity of Elections Act. The legislature would have the undoubted power to require an officer elect to file just such a statement as the law now prescribes, and to provide that for a failure so to do he should forfeit his office, or his right to office; but, under

the strict mandate of the constitution, it has no right to exact this different and additional oath or affirmation before the taking of office, as a prerequisite thereto. So much, therefore, of the act as requires the candidate to support his statement by the above-quoted oath as a prerequisite to the right to take office is void.

The findings of the court negative the contention of appellant that the expenditures made for carriages and for banners by Booth, a friend of defendant, were made by him as the agent of Clark, and consequently chargeable against Clark, under the law. These findings receive substantial support from the evidence, and need not further be considered.

The defendant, called upon to testify to an item of $22.65, designated as "Incidentals and Sundries," stated: "The way that item happened to be put in the statement was, that in filing my account I consulted with Mr. M. J. Desmond, the city clerk, and I had at that time vouchers for every dollar I spent during the campaign, and when we got down to amounts less than five dollars, he advised me to put them in under the head of 'Sundries,' which I did, and destroyed the vouchers. They were all for sums less than five dollars. I did not pay any money for hacks on election-day, and did not pay any money to Mr. Carragher for signs." Upon cross-examination, contestant's attorney questioned the witness about other alleged illegal expenditures; for example, "Q. Did you pay to the Sacramento Publishing Company, for publication and printing-work that they did for you in the campaign, the sum of seventy-five dollars?" Objection was made to these questions upon the ground that they were not cross-examination, and the objection was properly sustained. The testimony in chief was directed merely to the candidate's failure to segregate the item of twenty-two dollars, and to produce vouchers for the different amounts composing it. This, and his declaration that he had paid for no carriages or banners, make the sum of his evidence. It was not within the scope of cross-examination upon these matters to show what other or different amounts he might have expended. Upon that branch of inquiry the contestant could have called the defendant himself to the stand, when, if the witness was protected in his replies to the questions asked, by the provisions of the law, he could have been compelled to answer.

Certain rulings upon questions propounded to the witness

Cavanaugh, and his claim of privilege thereunder, merit more than passing notice.

The complaint charged as follows: "That said purported statement of moneys received and expended, made and filed by defendant, is willfully false in the following particulars: . . . Third. That while defendant was a candidate, as aforesaid, and for the purpose of aiding his election to said office of mayor, contestant is informed and believes, and upon such information and belief states the fact to be, that defendant paid to Wm. M. Sims the sum of one thousand nine hundred dollars, and that said Wm. M. Sims, with the knowledge and consent of defendant, and for the purpose of aiding the election of defendant to said office, paid to B. W. Cavanaugh the sum of three hundred dollars of said sum, and to Frank Daroux four hundred dollars of said sum, and to B. W. Cavanaugh, for Frank Farrar, $150, which sum was paid to said Frank Farrar by said B. W. Cavanaugh, and that said Wm. M. Sims paid to divers and sundry persons, unknown to contestants, the balance of said sum of $1,900; that said sums are not set forth in said statement."

The complaint also charges: "That while defendant was a candidate for election to said office of mayor of said city of Sacramento, as aforesaid, defendant committed offenses against the elective franchise, defined in title IV, part I, of the Penal Code of the state of California, in the following particulars: . . . That the defendant, with intent to promote the election of himself to the office of mayor of said city of Sacramento, as aforesaid, as contestant is informed and believes, and upon such information and belief states the fact to be, did willfully offer a reward to an elector of said city of Sacramento, for the purpose of procuring the election of defendant, in this, that the defendant did, for the purpose of procuring his election, as aforesaid, offer to one B. W. Cavanaugh, an elector of said city of Sacramento, one ninth of the official patronage of said office of mayor of said city,—that is to say, that in case defendant should be elected to said office, said B. W. Cavanaugh should name the persons who should be appointed by said mayor to fill one ninth of the appointive offices in said city; that there are many such offices which are filled by appointment by the mayor of said city."

The record shows the following proceedings touching the examination of Cavanaugh: —

" Counsel for contestant then asked the witness the following question:—

" 1. 'Were you present at any time between the second day of October and the seventh day of November, 1899, when a conversation occurred with the defendant with reference to the payment of any money for campaign expenses?'

" The witness replied: 'I decline to answer, on my constitutional rights, that I cannot be made a witness against myself, and I decline to criminate myself or degrade my character; and that to answer said question would tend to convict me of a felony.'

" Mr. Shinn, counsel for contestant, asked the court to make an order requiring the witness to answer the question.

" *Mr. Shinn.* — ' We expect to show by this witness that at a certain time the defendant gave to one William M. Sims nineteen hundred dollars to be used for his election purposes, and that William M. Sims gave to this witness three hundred dollars of that money to be used on behalf of the defendant for his election purposes, and that he gave to another party another sum of money.'

" The court denied the request, and contestant excepted.

" Counsel for contestant asked the witness the following question:—

" 2. 'Mr. Cavanaugh, between the second day of October, 1899, and the seventh day of November, 1899, did you receive any money from defendant, George H. Clark, or by his direction, for the purpose of aiding or securing his election?'

" The witness declined to answer, on the ground that his answer would tend to criminate himself, and would have a tendency to subject him to punishment for a felony.

"Counsel for contestant made an application to the court for an order requiring the witness to answer the question. The application was denied, and contestant excepted.

" Counsel for contestant asked the witness the following question:—

" 3. 'Did the defendant, George H. Clark, at any time, promise you one ninth or any portion of the official patronage of the office of mayor of the city of Sacramento, in case he was elected,—that is, any time between the second day of October and the seventh day of November, 1899?',

" The witness refused to answer the question, on the ground that his answer would tend to criminate him, and that his

answer would have a tendency to subject him to punishment for a felony.

"Counsel for contestant made an application to the court for an order requiring the witness to answer the question. The application was denied, and the contestant excepted. . . . .

"Counsel for contestant, by leave of the court, and for the purpose of making the record clear by pointing his exception to the ruling of the court, stated that he desired to prove by the witnesses the facts set forth in the question asked, and asked the witness the following question: —

"4. 'Did yourself and the defendant, Clark, Frank Daroux, James L. Gillis, William M. Sims, or any of the parties named, meet in the Oschner Building on or about the sixth day of November, 1899, and at such meeting did George H. Clark offer or promise to put up or advance any money for election purposes to any of the parties present; and did he say, in substance, that Mr. Sims would go with him; that Mr. William M. Sims would bring the money back and make the disposition of it that he had mentioned; and did he and Mr. Sims leave, and subsequently Mr. Sims returned with this money; and did he pay to you the sum of three hundred dollars, or any other sum, and to Frank Daroux the sum of four hundred dollars, or any other sum, and to any other person any sum of money, out of the money that he brought back?'

"The witness declined to answer the question, upon the grounds hereinbefore stated, and that the answer would have a tendency to subject him to punishment for a felony. The court ruled that he was not required to answer, and the counsel for contestant excepted.

"The counsel for contestant asked the witness the following question: —

"5. 'You claim, Mr. Cavanaugh, that to answer that question would have a tendency to convict you of a felony?' —A. 'Yes, sir.'"

It is shown that the salary of the mayor of Sacramento is three thousand dollars per annum. Under the Purity of Elections Act, the candidate for this office is permitted to spend ten per cent of one year's salary, or three hundred dollars. The candidate's sworn statement showed an expenditure of $289.15.

Section 32 of the act provides: "A person offending against any provision of sections 19, 20, 21, 22, 25, 26, 27, 28, 30, and

31 of .this act is a competent witness against another person so offending, and may be compelled to attend and testify upon any trial, hearing, proceeding, or lawful investigation or judicial proceeding, in the same manner as any other person. But the testimony so given shall not be used in any prosecution or proceeding, civil or criminal, against the party so testifying. A person so testifying shall not thereafter be liable to indictment or prosecution by information, nor to prosecution or punishment, for the offense with reference to which his testimony was given, and may plead or prove the giving of the testimony accordingly, in bar of such indictment, information, or prosecution."

Subdivisions 2 and 3 of section 19 are as follows: —

"Section 19. It shall be unlawful for any person, directly or indirectly, by himself, or through any other person, — . . . 2. To give, offer, or promise any office, place, or employment, or to promise to procure, or endeavor to procure, any office, place, or employment, to or for any voter, or to or for any other person, in order to induce such voter to vote or refrain from voting at any election, or to induce any voter to vote or refrain from voting at such election for any particular person or persons; 3. To make any gift, loan, promise, offer, procurement, or agreement, as aforesaid, to, for, or with any person, in order to induce such person to procure or endeavor to procure the election of any person, or the vote of any voter at any election."

Section 11 of the act (which section is without the purview and exemption of section 32) is as follows: —

"Section 11. Whenever any candidate for a public office pays, lends, or contributes, or offers or agrees to pay, to lend, or contribute, any money or other valuable consideration to or for any person, either for, —1. The doing or procuring to be done of any act forbidden to be done by the laws of this state relating to public elections; . . . 7. For any purpose in contravention of the provisions of this act; or 8. For any purpose whatever in excess of the maximum amount which such candidate may lawfully expend under the provisions of this act, . . .—such candidate shall, in addition to the punishment prescribed by the laws of this state or by this act, forfeit any office to which he may have been elected at the election in reference to which such crime or offense was committed, and if the candidate so offending is the incumbent of an office of profit or

trust under the laws of this state, he shall thereby forfeit this office."

With these provisions of the law before us, was the court justified in sustaining the refusal of the witness Cavanaugh to answer these questions upon the ground that his answer would tend to criminate or degrade him?    And in answer to this the legal consideration may be thus stated: If the matter sought to be elicited by the questions was matter embraced within the purview ·of any of the sections 19, 20, 21, 22, 25, 26, 27, 28, 30, or 31, and if, with the defendant as a "person offending," the witness himself was also a "person offending," then, by the express provisions of section 32, and by the authority of this court in *Ex parte Cohen*, 104 Cal. 524,[1] the witness could not claim immunity, and should have been compelled to testify.    But, upon the other hand, if the defendant was a person offending within the meaning of these sections, and the witness Cavanaugh was an innocent and non-offending person within the meaning of these sections, then the witness's claim of privilege was untenable, because his answers could not tend to criminate him, or convict him of an offense.    The design of section 32 is to compel evidence from an offending person, which, but for the protection afforded by the section, he could justifiably refuse to give, but an innocent person, having no need of such protection and exemption, cannot claim such privilege.

Coming now to the questions propounded to the witness, and taking them up *seriatim*, the question marked 1 is manifestly but a preliminary question, answerable by "yes" or "no." No conceivable answer which the witness might properly give would or could tend to criminate him or degrade his character.

The question marked 2, touching the reception of money from Clark for the purpose of aiding or securing his election, presents a threefold aspect: 1. If it has to do with the illegal giving of money by defendant, received and used by the witness for improper purposes, then the offense is one contemplated by the sections above quoted, and particularly by subdivision 1 of section 19, and the witness in his answer would be fully protected by the immunity afforded him by section 32. But 2. If it be said that there was nothing illegal in the candidate giving to Cavanaugh money to be used in aid of his election, because the gift, expenditure, and use of such money is

---

[1] 43 Am. St. Rep. 127.

recognized by the act, then Cavanaugh, at least, had not offended in accepting the money for the indicated purposes, and therefore had no right to claim his privilege. 3. The charge in the complaint is, that the defendant expended moneys in excess of the maximum amount which he could lawfully expend. (Sec. 11, subd. 8.) A candidate might unlawfully do this, and yet the recipients of the money in no way violate the law. No law imposes upon the recipient of a candidate's gift or money the duty of inquiring how much he (the candidate) has expended or proposes to expend to secure his election. Cavanaugh would have been guiltless of any offense, therefore, in receiving the money, and could not refuse to answer the question as to whether or not he had received it, and the amount that he had so received, because the inquiry was strictly pertinent to the case, and strictly within the charges preferred against the defendant,—to wit, that he had expended more than the maximum amount permitted by law. He had filed his statement of the amount that he had expended. If the prosecution was not permitted to bring in witnesses, and show one by one that the candidate had given to them moneys for election purposes, for which he had not accounted in his statement, how could a contestant ever prove such a violation—and such a flagrant violation—of the election law?

Question 3 deals with the alleged promise by the defendant to Cavanaugh of office, and the patronage of his office of mayor, —an offense clearly embraced within subdivision 2 of section 19 of the act. This, however, is made by the act an offense against the promising party, not against the person to whom the promise is made, even though he may act upon it. We have read the act with some care, to discover whether one who accepts such a promise, and upon the consideration of it votes, or induces others to vote, is guilty of an offense, but no such provision has come under our observation, and our attention has been directed to none such. But even if such a provision exists, and has been overlooked, it merely makes the promisee an offending person with the promisor, and still the promisee cannot refuse to testify, because he is protected by section 32. If, however, the promisee be not an offending person, while clearly the promisor is, then, as has been before said, the promisee has committed no offense, needs no immunity, and

has no privilege upon which to stand in his refusal to answer the question.

All that has been said applies with equal force to the fourth question.

But if it be said that respondent's counsel have had no opportunity to show that the answers to the questions would have tended to criminate Cavanaugh, it may be answered, — 1. That if they would have tended to criminate him, then, as above set forth, he would have had immunity; and 2. That this showing is not to be made in this court for the first time, but is to be made to the satisfaction of the trial judge in the first instance, before the witness can justify his refusal to testify. As was said by this court in *Ex parte Rogers*, 129 Cal. 468, "It is for the court to pass upon the sufficiency of the objection which the witness urges to answering, and not for the witness to decline to give relevant and pertinent testimony, which may be harmless to himself, upon his mere declaration that his answer may tend to criminate or degrade him." The trial court accepted the naked declaration of the witness, yet, as has been pointed out, if he was a co-offender, he was protected; if not, he could not claim immunity; and in either case the ruling was erroneous.

But it is said that the complaint charges a promise of patronage to Cavanaugh, "with the intent to promote his own (Clark's) election," and that this is not an offense, within subdivision 2 of section 19, because there it is stated that the promise must be made for the purpose of inducing a voter to refrain from voting, or to vote for some particular person. Upon this it is perhaps enough to say that we are not considering the sufficiency of the allegation of the complaint against a special demurrer, and, certainly, when a man makes a promise of patronage to secure his election, it is pretty well understood that the consideration is that the promisee will not only vote himself for the promisor, but induce as many of his friends as possible to do the same; but, aside from this, subdivision 3 of section 19 (which seems to have been overlooked) expressly makes it unlawful to promise any office, place, or employment to any person, "in order to induce such person to procure or endeavor to procure the election of any person." Surely, this offense is charged in the complaint.

Finally, it is urged that it is conceded by appellant that the

defendant's answers would tend to criminate him, and that our inquiry need go no further than this concession; or in other words, that we are bound to accept as matter of law, and as a rule of evidence, a concession as to the law made by appellant's attorney, no matter how faulty that concession may be. The answer to this I think is plain: 1. That we are not bound by such concession, our duty being to declare the law as it is, and not as either appellant or respondent may assume it to be; and 2. That if we are to regard ourselves bound by this so-called concession or admission, we must be bound by all of it; we have no right to accept a part and reject a part. It is like a stipulation: either all of its terms are to be given effect, or none of them. The admission of appellant, as will be seen from his brief, is not a general admission that Cavanaugh's answers would tend to criminate him; it is no more than a declaration and argument that the questions came within the purview of section 19, and therefore if his answers tended to criminate him, still he would be protected by the provisions of section 32. In fact, the declaration of appellant's attorneys is not a concession or admission at all.

For these reasons the judgment is reversed and the cause remanded for a new trial.

Temple, J., Van Dyke, J., Beatty, C. J., and Harrison, J., concurred.

GAROUTTE, J., and McFARLAND, J., dissenting.—We dissent from the judgment of reversal, and think the judgment of the superior court should be affirmed. We concur in the opinion of Mr. Justice Henshaw, except so far as it deals with the questions asked of the witness Cavanaugh, but we cannot agree to the conclusion reached on that subject.