BARNETT *v.* McCRAY.

Opinion delivered November 16, 1925.

1. OFFICERS—RIGHT OF ACTION FOR OFFICE.—Crawford & Moses' Dig., § 10326, authorizes persons entitled to an office to sue therefor, and the action need not be instituted by the prosecuting attorney, although three months have elapsed since the usurpation, but the State and the person entitled to an office may join in instituting the action.

2. OFFICERS—QUALIFICATION.—In Acts 1925, No. 21, § 16, providing that failure of any of the commissioners of Road Improvement District No. 1 of Hot Spring County to "qualify" within 10 days from passage of the act shall be deemed a non-intention to serve, the use of the word "qualify" refers to qualifications required in the Constitution, and it is sufficient for the commission to take the oath prescribed by the Constitution; the provision as to the form of·oath prescribed in Special Acts 1921, Nos. 16, 143, as amended by Special Acts 1923, No. 11, requiring a different form of oath, being superseded by the later act.

3. STATUTES—RECORD OF YEA AND NAY VOTE.—Where the House journal on the final passage of a bill recites the names of 64 as voting for the bill and 36 as absent, the specific recital of the affirmative vote will control, although the summary of the vote states that only 63 voted for the bill.

4. STATUTES—REVIVAL OR EXTENSION OF PRIOR ACT.—Acts 1925, No. 21, superseding the provisions of Special Acts of 1921, Nos. 16 and 143, and special act No. 11 of 1923, did not constitute either a revival or an amendment or an extension of the former acts by reference to title merely, since it was a complete enactment of all the provisions intended to be incorporated into the statute.

Appeal from Hot Spring Circuit Court; *Thomas E. Toler,* Judge; affirmed.

*Oscar Barnett,* for appellant.

*D. D. Glover* and *John L. McClellan,* for appellee.

McCULLOCH, C. J.   Road Improvement District No. 1 of Hot Spring County was created by special statute enacted by the General Assembly of 1921, and the statute was amended in some respects, not important in the present inquiry, by another special statute at the session of 1923.   Act No. 16, session of 1921, and acts No. 43 and No. 11 of 1923.   The statute provided that the county judge, acting *ex officio,* and two other persons should be the commissioners of the district, and appellants E. O. Barnett and W. L. Collie were the two commissioners of the district, acting with the county judge, who is also one of the appellants.

The General Assembly of 1925, by act No. 21 of that session, abolished the board of commissioners of this district as created by the former statute, and created in succession a new board of commissioners to perform all of the duties prescribed in the statute and named the appellees, six of them, as commissioners. Section 3 of the new statute names the six commissioners and provides that the terms of office ''shall extend from time of qualification until January 1, 1927, and whose successors shall be elected at the general election to be held in the year 1926, for a period of two years.''   Section 16 provides that a failure on the part of any of the commissioners to ''qualify within ten days from the passage of this act shall be deemed a non-intention to serve, and such a vacancy shall be filled by appointment by the county judge.''   There are other provisions of the new statute with reference to the collection of taxes and depositing the funds of the district, and some other provisions, the validity of which is not involved in this controversy.   The new statute contained no emergency clause, and therefore went into effect ninety days after the adjournment of the regular session of the General Assembly of 1925.   Appellants refused to yield to appellees as the new commissioners named in the statute, and the latter instituted this action against them.   There was a judgment of ouster rendered by the court below, and an appeal has been prosecuted to this court.

The first contention of counsel for appellants is that appellees have no right to maintain the action, which it is contended should have been instituted by the prosecuting attorney. Section 10326, Crawford & Moses' Digest, under which this suit was instituted, reads as follows:

"Whenever any person usurps an office or franchi··· to which he is not entitled by law, an action by proceedings at law may be instituted against him, either by the State or the party entitled to the office or franchise, to prevent the usurper from exercising the office or franchise."

The statute just quoted clearly confers authority on persons entitled to an office to maintain an action, but the State and the persons entitled to the office may join in the institution of the action. *Whittaker* v. *Watson,* 68 Ark. 555.

There is a further contention that the action should have been brought by the prosecuting attorney, and not by appellees, on the ground that appellees had not instituted an action within three months after the alleged usurpation. This contention is based on the language of the statute (Crawford & Moses' Digest, § 10327), which is that where "the person entitled fails to institute the same for three months after the usurpation, it becomes the duty of the prosecuting attorney to initiate such action." It is not true that appellees failed for a period of three months to institute the action. There being no emergency clause, the action instituted on July 10, 1925, was within three months after the statute abolishing the old board of commissioners, and creating the new, went into effect. In the next place, it may be said in reply to this contention that the authority given to the State to institute the action, if not instituted by the party entitled to the office within three months, does not restrict the right of action of the person entitled to the office. This is not a statute of limitation, but an authority conferred upon the State to institute the action.

The next contention of appellants is that appellees are not entitled to exercise the duties of commissioners, and therefore are not entitled to recover in this action, for the reason that they have not legally qualified themselves by taking the proper oath of office. The old statute which created the board of commissioners prescribed an oath of office to "faithfully discharge his duties, and that he will not be interested directly nor indirectly in any contract let or made by the board." The statute further provides that a failure to take the oath within twenty days will be deemed to be a resignation of such office. The new statute, it will be observed, says nothing about the form of the oath, but merely provides in § 16, *supra,* that there shall be a vacancy upon the failure to "qualify" within ten days. The provisions of the old statute were superseded by those of the new, which abolished the old commission and created a new one and prescribed the method of taking office. The new provisions completely covered the subject and operated as a repeal of all the requirements of the old statute on that subject. The use of the word "qualify" in the new statute, if effective at all, must be deemed to have had reference to the qualifications required in the Constitution, as none other was specified in the statute. Appellees took the general oath provided by the Constitution to support the Constitution of the United States and the Constitution of the State of Arkansas and to faithfully discharge the duties of the office. That was sufficient for induction of appellees into the office to which they had been named by the Legislature.

The validity of the statute is assailed on the ground that on its final passage by the House of Representatives the names of the members voting for and against the same were not entered on the journal. Constitution of 1874, art. 5, § 22. It appears from an examination of the journal of the House that on the final passage of this bill the vote was taken by yeas and nays, and the names of sixty-three members were recorded as voting in the affirmative. The record contains a summary of the vote,

specifying that there were sixty-four members present and voting, and thirty-six absent and not voting, and that all present voted in the affirmative. The names of the absentees were recited in the journal. It is thus seen that the only omission, if it may be so termed, is that the names of only sixty-three of the members are recorded as voting in the affirmative, whereas the summary of the vote recites that there were sixty-four. This was obviously a clerical misprision, and is not sufficient to defeat the enactment of the staute. The purpose of this requirement of the Constitution was to place upon record the names of those who are responsible for legislation, and it would carry the effect of the provision too far to say that a clerical misprision omitting the name of one of the members was fatal to the validity of legislation thus enacted. If sufficient names were omitted to reduce the number of votes below a majority, there would be much force in the argument that the provision of the Constitution had not been complied with, but in the present instance we have an affirmative recital that the votes of all present were in the affirmative, and sixty-three names are mentioned as present and voting. The absentees were also mentioned, and the fact that there was an error in reciting that sixty-four voted in the affirmative must be treated as an error in summarizing the number of votes. The specific recital of all the names must control over the general summary of the number of votes cast.

The new statute did not constitute either a revival or an amendment or an extension merely by reference to title, so as to offend against the provision of the Constitution on that subject (art 5, § 23), as there was a complete enactment of all the new provisions intended to be incorporated into the statute.

The judgment of the circuit court is in all things correct, and the same is affirmed.