In the Matter of the Construction of the Will of REBECCA A. D. SWOPE, Deceased.

Surrogate's Court, New York County, March 5, 1953.

*Harold Harper* for Division of Foreign Missions of Board of Missions and Church Extension of the Methodist Church, petitioner.

*Nathaniel L. Goldstein, Attorney-General (P. Hodges Combier* of counsel), in his statutory capacity under section 12 of Personal Property Law and section 113 of Real Property Law, respondent.

FRANKENTHALER, S. The residuary legatee has applied for a construction of the will, invoking the cy pres power of this court (Personal Property Law, § 12, subd. 2). Testatrix bequeathed her residuary estate to numerous charities and provided that a portion thereof pass " to the ' Board of Foreign Missions of the Methodist Episcopal Church ', incorporated under the Laws of the State of New York, the income of which is to be used for the maintenance of the ' Nankin Theological Seminary ' at Nankin, China." At testatrix' death on March 13, 1931, Nanking Theological Seminary (which had adopted that name in 1917) was an unincorporated institution conducting a seminary with its own campus and buildings at Nanking, China, operating as an interdenominational project of leading Baptist, Presbyterian, Disciples of Christ and Methodist sects. In 1938, it was duly incorporated by the Regents of the State of New York as a New York educational corporation and is still in existence as such. The work of the seminary was temporarily discontinued in the fall of 1937, with the approach of the Japanese Army to Nanking; in September, 1938, it opened rented

quarters in Shanghai and in 1941, it opened a branch at Chengtu in West China, both of which continued operation until after World War II. In January, 1946, the Shanghai and Chengtu branches were reunited at Nanking and activities were resumed on a normal basis until April, 1949, when Nanking was occupied by Chinese Communist Armies, at which time some faculty members withdrew. The seminary continued with a reduced student body and opened for the fall term of 1950, but after the entrance of Chinese " Volunteers " into Korea in October, 1950, American faculty members withdrew and by April, 1951, the last one had left China. Although the seminary is apparently still in operation under a Chinese faculty, communication with any Chinese who is or was connected with the seminary has become impossible because of the hostility of the present Chinese Government to the United States. Since testatrix' death petitioner has applied the income from the bequest to the maintenance of the seminary and, after its incorporation, to the New York educational corporation which operated it. As literal compliance with testatrix' instructions that the income " is to be used for the maintenance of the ' Nankin Theological Seminary ' at Nankin, China " is now impossible, petitioner prays that the court approve continued payment of the income to the educational corporation for its general purposes. It should be noted that in 1952, the corporate purposes of the educational corporation were broadened by amendment of its charter to permit it to receive and disburse funds for any purpose contributing to Christian theological education in China or other areas of Asia and for educational assistance to Chinese and other Far Eastern students preparing for the ministry.

It seems clear that payment to the educational corporation will more nearly carry out testatrix' general purpose than would payment to the Nanking Theological Seminary at Nanking, now operated under Chinese Communist control. Transmission of funds to Nanking, China, is now impracticable or impossible and there can be no assurance that such funds would be used for the purposes contemplated by the testatrix. Furthermore, the Foreign Assets Control Regulations issued by the Secretary of the Treasury on December 17, 1950, pursuant to Executive Order No. 9193 (15 Federal Register 9040) prohibit transactions involving payments to nationals of China and North Korea except to the extent that they have been authorized by appropriate license which is not here the case.

Where the specific directions of the testatrix have been carried out since the inception of the trust, but in the course of time conditions have changed so that it is impossible or impracticable to carry out such directions, the cy pres doctrine is almost invariably applied (3 Scott on Trusts, § 399.3; see *Matter of Stuart,* 183 Misc. 20; *Matter of Neher,* 279 N. Y. 370, and *Matter of Gary,* 161 Misc. 351, affd. 248 App. Div. 373, affd. 272 N. Y. 635). The cy pres power of this court under section 12 of the Personal Property Law has frequently been invoked where the international situation has made the fulfillment of decedent's intent impossible or impracticable (*Matter of Wheeler,* N. Y. L. J., Dec. 5, 1946, p. 1599, col. 7; *Matter of Brunzel,* 51 N. Y. S. 2d 483; *Matter of Shelton,* 87 N. Y. S. 2d 853). Moreover, a legacy payable to an unincorporated branch or chapter of an incorporated parent may be directed to be paid over to such incorporated parent (*Matter of Bayside Red Cross League,* 228 App. Div. 719). Accordingly, the court holds that the income bequeathed " for the maintenance of the ' Nankin Theological Seminary ' at Nankin, China " should be paid to Nanking Theological Seminary, the New York educational corporation.

Submit decree on notice construing the will accordingly.