**DIVISION OF WORLD MISSIONS OF BOARD OF MISSIONS OF METHODIST CHURCH, Appellant,**

v.

**NATIONAL BANK OF COMMERCE OF SAN ANTONIO, as Trustee, et al., Appellees.**

No. 13486.

Court of Civil Appeals of Texas.

San Antonio.

July 1, 1959.

Rehearing Denied Sept. 2, 1959.

Second Motion for Rehearing Denied Sept. 30, 1959.

L. M. Bickett, Boyle, Wheeler, Gresham, Davis & Gregory, San Antonio, for appellant.

Clemens, Knight, Weiss & Spencer, San Antonio, for appellees.

MURRAY, Chief Justice.

This suit was filed by National Bank of Commerce of San Antonio, as trustee under the last will and testament of Theodore M. Plummer, Deceased, against Division of World Missions of the Board of Missions of the Methodist Church, hereinafter referred to as "Mission Board," and San Antonio Independent School District, for a declaratory judgment construing the will of Theodore M. Plummer, and for instructions as to distribution of the residuary estate of said decedent. Plaintiff alleged that the two defendants were asserting conflicting claims to said residuary estate. Mission Board, as a defendant in the trial court, alleged that under the provisions of the last will and testament of Theodore M. Plummer, deceased, it became entitled on the death of Mrs. Mabel B. Plummer, wife of the testator, to receive and have paid over to it all of the corpus and assets of said trust estate held by plaintiff, and, further, that "it accepts and qualifies to receive said trust estate as the first named taker thereof."

The San Antonio Independent School District, as a defendant in the trial court, alleged that it was entitled to receive all of the residuary estate of Theodore M. Plummer, deceased, because the Mission Board "is unable to and cannot carry out the provisions of the will," and therefore cannot accept and qualify to receive said trust estate.

The case was tried before the court without a jury and judgment rendered, construing the will of Theodore M. Plummer, deceased, and the codicils thereto, in favor of San Antonio Independent School District and against Mission Board, from which judgment the Mission Board has duly prosecuted this appeal.

Appellant's first point is as follows:

"The court erred in rendering judgment in favor of the San Antonio In-

dependent School District because the undisputed evidence shows that appellant, Division of World Missions of the Board of Missions of the Methodist Church, accepts and qualifies to receive the residuary estate of Theodore M. Plummer, deceased, in that it is willing, able, and fully equipped, to use and distribute the trust fund bequeathed to it for the purposes and for the benefit of the persons named in the will."

Theodore M. Plummer, who will hereinafter be referred to as Plummer, executed the will which is here involved on October 19, 1943. Thereafter, on February 14, 1945, he executed a codicil, and on July 1, 1948, a second codicil. Plummer died on January 29, 1949, and soon thereafter his will, together with the codicils, was duly probated in Bexar County, Texas. The will, in Section VIII, devised testator's residuary estate to National Bank of Commerce as Trustee, with the direction to pay to his wife, Mabel B. Plummer, the net income of the trust estate in quarterly installments during her lifetime. Following the provision for payment of income to Testator's wife, the will states:

"It is my will and desire that upon the death of my wife, Mabel B. Plummer, all the corpus or assets in said Trust shall go to The Division of Foreign Missions of the Board of Missions and Church Extension of the Methodist Church, Incorporated by the State of New York, with present headquarters at 150 Fifth Avenue, New York City, New York, hereinafter called 'Mission Board', for the purpose of physical and material relief only, such as food, clothing, medicine, shelter, etc., for needy Chinese people in China to be so used as rapidly as possible, consistent with good judgment and results, which I think will very likely be for the most part in the post war period, when China is accessible and there are no War Chests and there is less emotional sympathy for China."

Mrs. Mabel B. Plummer died on June 27, 1957.

In Section XIV the will of Theodore M. Plummer provides:

"In the event the Mission Board shall refuse to accept or qualify for any bequest herein bequeathed to it, then and in that event the bequests herein made to it shall go to the School Board of San Antonio (Texas) Independent School District, without restrictions, except that it shall be used for extra school work or activities, and not for the payment of debts or for buildings, nor for any expenses that the taxpayers should or customarily pay for."

Section XII of the will reads as follows:

"I hereby authorize and empower the said Mission Board to deduct five (5%) per cent of all sums received by it from bequests herein, said five (5%) per cent to be deductible only once and not to be cumulative or repetitious, for its overhead, operation and distribution expenses or fee, to all of which it has agreed. It is my desire and I hereby direct that the remaining Ninety-five (95%) per cent shall reach the ultimate beneficiaries or consumers in the form of money, shelter, supplies or other material relief, free of all charges or deductions, except direct original costs and transportation, and that all relief received from this bequest shall be over and above any relief that would have been received by the ultimate beneficiaries without this relief, which is to say, that this bequest shall not be a substitute for other relief, and that my desires shall not be evaded or thwarted by using funds of this bequest where other funds would have been used, and shifting those other funds to other places or purposes. I approve religious work that the Mission Board may desire to do at its own expense and with other funds

supplemental to this relief, and of incidental benefits thereto which it may get, but the Mission Board shall be in honor bound not to lessen its other work with or benefits to the ultimate beneficiaries of this bequest, because of this bequest. I am not a Methodist and have in mind solely the beneficiaries herein named and am using this Mission Board for the purpose of efficient distribution. The Methodist Church has specialized in Chinese work and therefore should be well qualified for my purposes."

Section XVI of the will provides:

"I have always advocated that welfare and charity bequests be spent as rapidly as they could be spent wisely. I advocate this doubly now that we are faced with the innovations and confusions mentioned. The history of hoarded funds and endowments, even in former times, is often that of sloth, moths, rust and decay. I therefore advise the institutional beneficiaries herein, except said Mission Board, to invest in any needed betterments to their plants or, including said Mission Board, in relief and good work where the investment will compound into continuing good work. *The best hedge and protection is to spend quickly and wisely for value received.*

"* * * As a group, social workers do not impress me as qualified to chart people's lives nor do I think their degree diplomas are certificates of near omnipotence as at least some appear to believe, by the way they scorn lay opinions. I therefore prefer to stick to the fundamentals or 'grass roots' of material and physical relief and have chosen a field so broad and needy that doubtful cases need not be considered and I leave the social work to the many who prefer it. There is room for both views, especially as so many types of domestic relief and social work are now generally well supported by both the public and by governments, local, state and federal, with resulting controversies and complications into which I do not desire to deeply enter.

"I have selected China, with no prejudice, however, against other fields, as one of the world's largest fields for productive charity, where hundreds of millions of people of a backward but old and cultured race and civilization make a vast and fertile field susceptible to benign modernization and unlikely to make it malign as did the Japanese, whose people have endured slaughter and distress beyond comprehension, where resources are low and the people as a whole are kindly disposed and industrious, and have the capacity to appreciate and absorb the good in modern life if offered to them. I do not claim perfection for them or for any race or nationality."

Appellant's witness Dr. Tracy K. Jones, Jr., a graduate of Yale Divinity School, formerly a missionary in China, and at present Executive Secretary for China and southeast Asia for the "Board of Missions", testified that the Mission Board is ready and willing to accept the bequest of the Plummer residuary estate with all of the obligations imposed by the will, including the limitation of five per cent for overhead expenses. To the same effect is the testimony of Dr. Donald E. MacInnis, a graduate of Yale Divinity School, who has served for many years as a teacher and missionary in China and on the island of Formosa.

By codicils dated February 14, 1945 and July 1, 1948, the testator made slight changes in the terms of his will, insofar as they concerned a small trust for his nephew and another for his cousin. No other changes were made.

When Mrs. Mabel B. Plummer, the life beneficiary, died on June 27, 1957, the mainland of China was in complete control

of the Communists and appellant had done no work in China since the end of 1949.

Appellant's witness, Tracy K. Jones, Jr., testified that appellant was engaged in relief work in China from 1944 to 1948, under an expanded program necessitated by Japanese activities, first because of migration of refugees from east to west, and later because of a reverse migration from west to east China. On July 1, 1948, North China was under Communist control but the big cities were not. In 1948, some of appellant's people who wanted to leave China did so, and more left in 1949. It became obvious in 1949 that the Communists would win North China. In 1950 all of "our people" were on the move, and by 1951 those remaining were under house arrest or in prison.

Appellant conducted no activities of any character in Taiwan (Formosa) until in 1952 when it had careful consultation with Presbyterian leaders on the island, and first began to work in Taiwan in 1953.

Appellant first entered Hong Kong in 1948, by opening a single office, being a room in the Soldiers' and Sailors' Home of the British Headquarters, for the assistance of its own people coming through Hong Kong from China, the office really being an emergency office to handle emergency problems of missionaries who were related to the Methodist Church on the mainland. The first real relief work in Hong Kong was begun in 1952, after consultation and upon invitation of the British Methodist Church, as appellant had to avoid imposing on "their territory."

In 1953 appellant prosecuted a proceeding in the Surrogate's Court of New York County, stating under oath that it had not been able for some time to conduct activities in China because of Communist hostility and expulsion of its representatives. Appellant was permitted under cy pres to use its trust fund in other activities. This proceeding is fully reported in In re Swope's Estate, 1953, 204 Misc. 510, 121 N.Y.S.2d 181.

Hong Kong is a British Crown Colony, a portion of the territory being ceded outright and a portion being under a ninety-nine year lease executed in 1898, all being under the exclusive jurisdiction, government and control of Great Britain, and separated from China by international boundary. It has been recognized by the courts as a country separate and apart from China. In Sen v. United States Immigration and Naturalization Service, D.C., 137 F.Supp. 236, the court took judicial notice that Hong Kong is a British Crown Colony and a country different from China as a country of residence.

Thus we come to the all important question as to whether Mission Board accepted and qualified to carry out the provisions of Plummer's will. The residue of Plummer's estate was to go to the San Antonio Independent School District only in the event the Mission Board "shall refuse to accept or qualify for any bequest herein bequeathed to it." It is conclusively shown that Mission Board, acting through its officers, agreed to accept the bequest made to it in Plummer's will, so the only remaining question is as to whether it qualified for such purpose. The word qualify has been variously defined. 35 Words and Phrases Qualify Pages 605 and 606. We here copy some of the definitions found on page 606:

> "The term 'qualify' under constitutional provision (Kans.Const. art. 3, § 12) permitting judicial officers to hold their offices until their successors 'qualify,' has a well-defined meaning. It means to take such steps as the statute requires before a person elected or appointed to an office is allowed to enter on the discharge of its duties. In the case of a probate judge, it meant to file a sufficient bond, to be approved by the county clerk, and to take and subscribe the official oath, since such were the only prerequisites required of person elected or appointed probate judge. Toy ex rel. Elliott v. Voelker, 262 N.W. 881, 884, 273 Mich. 205.

"In Acts 1925, No. 21, § 16, providing that failure of any of the commissioners of road improvement district No. 1 of Hot Springs county to 'qualify' within 10 days from passage of the act shall be deemed a nonintention to serve, the use of the word 'qualify' refers to qualifications required in the Constitution, and it is sufficient for commissioners to take the general oath provided by the Constitution to support the Constitution, etc.; the provisions of the old statute, Sp. Acts 1921, Nos. 16, 143, as amended by Sp. Acts 1923, No. 11, requiring a different form of oath, being superseded by those of the new. Barnett v. McCray, 277 S.W. 45, 47, 169 Ark. 833.

"In holding Purity of Elections Act, § 4, requiring a successful candidate to swear to a statement of his expenses as a qualification to taking office to be a violation of Const. art. 20, § 3, describing the oath which a successful candidate shall take, and providing that no other qualification shall be taken, the court quotes State [ex rel. Elliott] v. Bemenderfer, 96 Ind. 374, 376, as saying: 'The term "qualify," as used in the statute, does not mean possessed of the necessary political, mental, and moral endowments, but means the acts performed after election, as taking the official oath and executing an official bond. "Eligible" means capable of being chosen, while "qualified" refers to the performance of the acts which the person chosen is required to perform before he can enter into office. Abbott, in defining the word "qualify," says it means to take the oath and give the bond required by law from an administrator, executor, public officer, or the like, before he may enter into the discharge of his duties.' Bradley v. Clark, 65 P. 395, 396, 133 Cal. 196."

In 35 Words and Phrases Cumulative Annual Pocket Part, the word "Qualify" is defined as follows:

"Where certificate of election was issued to defendant and defendant filed official bond and oath within time required by law, defendant was 'elected and qualified' since to 'qualify,' merely means to file an official bond and oath. State ex rel. Flynn v. Ellis, 98 P.2d 879, 882, 110 Mont. 43."

It occurs to us that what Plummer meant by the word "qualify" was that Mission Board would take such steps as the statutes might require of such an agent or trustee before it could receive the residue of his estate upon the death of his wife. If there were no steps required, then Mission Board would be entitled to receive such funds upon its expressing its willingness to enter upon the duties required of it by the provisions of Plummer's will.

Appellees contend that the word should be construed to mean that Mission Board was in a position and had the ability to carry out the provisions of the will. We have not been cited to nor have we been able to find any authorities holding that the word "qualify" as used in Plummer's will should be given such a meaning.

However, if we should say that Plummer intended by the word qualify as used in his will, that his residuary estate should not go to Mission Board unless it could show at the time of Mrs. Plummer's death that it was in a position and had the ability and the facilities to carry out the provisions of his will, to the effect that such estate, after the deduction of the 5% provided for cost of administration, should go to " 'Mission Board', for the purpose of physical and material relief only, such as food, clothing, medicine, shelter, etc., for needy Chinese people in China," then we find that Mission Board has shown that it can substantially comply with these provisions.

The record shows that while in 1957, at the time of Mrs. Plummer's death, the mainland of China had been overrun by the Communists and a hostile government set up, which would not permit Americans to carry on missionary work there, that all of the

missionaries operating under the Mission Board had withdrawn from the mainland of China and would not be allowed to go back there to resume their missionary work, either by the Communist Chinese government or by our own government, the Mission Board did have its missionaries in Formosa, which is a part of China, and is the seat of the Chinese Nationalist Government, which is recognized by the United States, and we carry on diplomatic relations with her. Chinese Nationalist Government is a member of the United Nations. When the Nationalist Government moved to Formosa in 1949, it brought two million Chinese refugees from the mainland. Formosa increased in population from five and one-half million at the end of World War II, to ten million at the present time. There is a great deal of unemployment in Formosa at this time, and distribution of food products for some 350,000 Chinese families is currently being made and the supply is inadequate. Milk, wheat flour and cornmeal are not available, and there is a great need for clothing, bedding, vitamins and shelter. Tuberculosis and other diseases of malnutrition are prevalent. There can be no doubt but that there is a fertile field for just such charity as Plummer had in mind, among these needy Chinese people in Formosa, which is now China.

It is true that when Plummer executed his will, Mission Board was only carrying on its work on the mainland of China, and no doubt he had in mind that his residuary estate would be used upon the mainland of China, but when he executed the two codicils, and certainly before his death in 1949, he must have foreseen that the Communists were going to overrun the mainland of China, and that the only free China would be on the large island of Formosa, yet he made no changes in his will with reference to the distribution of his residuary estate.

It is apparent that Mission Board is now able to carry out the provisions of Plummer's will by expending his residuary estate upon the needy Chinese people in China,

that is on the Island of Formosa. His residuary estate is now estimated to be between $600,000 and $1,000,000, which would not be too much money to spend upon the needy Chinese now living in Formosa.

The testator devised all the corpus or assets in his residuary estate to the Mission Board, "for the purpose of physical and material relief only, such as food, clothing, medicine, shelter, etc., for needy Chinese people in China." At the trial it was proved that the Mission Board has access to Hong Kong, where such relief could be administered to Chinese people. The trial court held that because Hong Kong is a British Crown Colony, that the expenditure of funds at that place would not be in China. In our opinion, however, Hong Kong has historically been and still is the leading seaport of what is generally known as South China. Hong Kong, historically, geographically, and by common parlance is recognized as a place in China. The common and general idea that Hong Kong is in China is not unlike the accepted idea that Calcutta is in India, notwithstanding the fact that India is a part of the British Commonwealth of Nations.

The trial court erred in decreeing that the will of Plummer be construed to devise to San Antonio Independent School District all of the assets of every kind and character composing the residuary estate, and tendered into court during trial by National Bank of Commerce as Trustee under the will of Plummer, under Exhibit No. 6, as well as all transmutations thereof and additions or increases thereto, and in decreeing that San Antonio Independent School District recover all of the same and that Division of World Missions of the Board of Missions of the Methodist Church recover nothing. That part of the decree will be reversed and set aside and judgment amended so as to permit Mission Board to recover these funds and San Antonio Independent School District to recover nothing, and the judgment as thus amended is affirmed.

On Motion for Rehearing.

POPE, Justice.

Most of appellee's motion for rehearing centers around the argument that testator executed his will at a time when knowledge about Formosa and Hong Kong could not be attributed to him, and that necessarily he must have intended that the residuary estate be used on the mainland only. Appellee argues that the testator intended the mainland only, since he declared in his will, "I have selected China * * * as one of the largest fields for productive charity where hundreds of millions of people * * * make a vast and fertile field * * *." Appellee argues that only the mainland has such hundreds of millions of people.

Testator executed his will on October 19, 1943. In the eighth paragraph he declared that his bequest should be used for the purpose of relief "for needy Chinese people in China * * * which I think will very likely be for the most part in the post war period, when China is accessible and there are no War Chests and there is less emotional sympathy for China." He thus indicates that he was aware of the events during the war years when China was occupied by Japanese. In December, 1943, shortly after the date of the original will, the United States, Great Britain and China participated in the Cairo Conference and declared specifically that Formosa would be restored to China. In the Potsdam Proclamation of July 26, 1945, which defined the terms of the Japanese surrender, the Cairo Declaration was reaffirmed. The terms of the surrender on September 2, 1945, between Japan on the one hand, and the governments of China, United States and Great Britain, on the other, required the Potsdam Declaration to be executed. This record shows that since that date Formosa has been and still is a province of China, and is so recognized by the United States and by the United Nations. The President of the United States and the Secretary of State, Acheson, on January 16, 1950, each declared that the United States since 1945 "has accepted the exercise of Chinese authority over the Island," and that "the Government on Formosa was recognized by everybody as the Government of China." It was while these things were transpiring before the whole world that the testator, first on February 14, 1945, and later on July 1, 1948, made two codicils to his will, but made no changes in the terms of the will with respect to Chinese aid. A fair construction of the testator's intent is that he desired to aid the Chinese people whether on the mainland or Formosa.

By the 1948 codicil, testator directed the trustee to pay a cousin a small amount of cash quarterly, and to withhold from the Mission Board sufficient securities to provide the cash. At that time the testator indicated his continuing intent that the Mission Board carry out his declared purposes, even though the mainland of China was then being rapidly overrun by the Communists. This is inconsistent with the idea that he intended the estate to be distributed only on the mainland of China or that the bequest should lapse. To hold that he bequeathed his estate only to Chinese who reside on the mainland is to hold something which he did not say in his will. Testator selected China with its hundreds of millions of people, because it makes "a vast and fertile field susceptible to benign modernization." It was because of this unlimited field for service that he selected that country. A part of that field was and is Formosa, which was and is a part of China. The Chinese fields are yet white unto the harvest.

The motion for rehearing is overruled.