TOY, *ex rel.* ELLIOTT, *v.* VOELKER.

1. OFFICERS—VACANCIES—STATUTES.

Statutory enumeration of events affecting an incumbent, result-
ing in vacancy of a public office, *held*, not exclusive, where
statute does not, and legislature could not, deny existence of
vacancy where an officer completes his constitutional term of
office and no one is legally authorized to succeed him (Const.
1908, art. 11, § 2; 1 Comp. Laws 1929, § 3350).

2. SAME—ELECTION, QUALIFICATION AND DEATH OF SUCCESSOR.

When a successor has been legally elected and qualified, the prior
incumbent's right to hold over thereupon ceases, and it does
not revive because his successor dies after qualifying for office
but before the commencement of his term.

3. SAME—QUALIFYING FOR OFFICE.

To qualify for an office means to take such steps as a statute re-
quires before a person elected or appointed to such office is
allowed to enter on the discharge of its duties.

4. SAME—ELECTION AND DEATH OF SUCCESSOR BEFORE QUALIFICA-
TION.

When a successor has been elected but dies before commencement
of his term without having qualified, no vacancy occurs but
the incumbent holds over.

5. SAME—QUALIFICATION—SURVIVAL OF SUCCESSOR-ELECT.

"Qualified" as used in connection with successor to public office
who has been elected does not mean other than performance
of acts required by law as a condition precedent to the right
to enter upon the duties of the office and, in the absence of
special language, does not contemplate physical survival of
the elected successor until commencement of his term or to
any future time.

6. SAME—VACANCIES—WHAT CONSTITUTES.

An office is not vacant so long as it is supplied, in the manner
provided by the Constitution or law, with an incumbent who
is legally qualified to exercise the powers and perform the

duties which appertain to it; and, conversely, it is vacant, in the eye of the law, whenever it is unoccupied by a legally qualified incumbent who has a lawful right to continue therein until the happening of some future event.

7. CONSTITUTIONAL LAW—SUPERINTENDENT OF PUBLIC INSTRUCTION —HOLD OVER TERM OF OFFICE.

Italicized clause in constitutional provision that superintendent of public instruction should hold office for period of two years from the first day of July following his election *and until his successor is elected and qualified* is plain and has an accepted meaning in the law and was framed to provide hold over term for benefit of the public and not for private profit of the incumbent (Const. 1908, art 11, § 2).

8. SAME—FUNCTION—SUPPLEMENTAL LEGISLATION.

The function of a constitution is not to legislate in detail but generally to set limits upon the otherwise plenary power of the legislature and, in many respects, it permits or needs supplemental legislation.

9. SAME—OFFICERS—VACANCIES—SUPERINTENDENT OF PUBLIC IN- STRUCTION.

Constitution provides for vacancies in State offices by guberna- torial appointment but does not legislate upon all possible future contingencies and vacancies; instead, leaving them to operation of general constitutional provision, legislative action or natural result; and as to superintendent of public instruc- tion it provides a general rule and adds no words to indicate special privilege (Const. 1908, art. 11, § 2).

10. OFFICERS — SUPERINTENDENT OF PUBLIC INSTRUCTION — HOLD OVER TERM OF OFFICE.

Hold over term of office of superintendent of public instruction is purely conditional on failure of an elected successor or his qualification and incumbent's right thereto does not end until his successor has been elected and has accepted the office by qualifying (Const. 1908, art. 11, § 2).

11. SAME—HOLD OVER TERM OF OFFICE—SUPERINTENDENT OF PUBLIC INSTRUCTION.

Words "and until" in clause providing for hold over term of superintendent of public instruction carry a permission but not a command of futurity, include but do not require election and qualification of a successor, or either, to follow ending of incumbent's fixed term (Const. 1908, art. 11, § 2).

12. SAME—SUPERINTENDENT OF PUBLIC INSTRUCTION—QUALIFICATION
FOR OFFICE—OATH OF OFFICE.

   The constitutional oath of office is the only act of qualification
   for office of superintendent of public instruction and it may
   be taken before the elected officer's term begins (Const. 1908,
   art. 11, § 2, art. 16, § 2).

13. SCHOOLS AND SCHOOL DISTRICTS—SUPERINTENDENT OF PUBLIC IN-
STRUCTION—HOLD OVER TERM OF OFFICE.

   Election and qualification of successor to office of superintendent
   of public instruction before end of incumbent's fixed term
   nullifies provision for incumbent's hold over term and his
   right thereto is not revived by death of successor thereafter
   before commencement of term of office (Const. 1908, art. 11,
   § 2).

14. OFFICERS—BONDS—QUALIFICATION FOR OFFICE.

   Statutory command that an officer give a bond is not necessarily
   intended as a qualification for office but may be a mere min-
   isterial act for the security of the government.

15. SAME—STATUTES—SUPERINTENDENT OF PUBLIC INSTRUCTION.

   Statute requiring superintendent of public instruction "when
   he enters upon the duties of his office" to give a surety bond
   *held,* not to require bond as a qualification for office since the
   word "before" is commonly used in statutes in lieu of
   "when" to accomplish such a result (1 Comp. Laws 1929,
   § 392).

16. WORDS AND PHRASES—WHEN—SUPERINTENDENT OF PUBLIC IN-
STRUCTION—BONDS.

   Word "when" has no fixed meaning, is an adverb of time and
   ordinarily means "at the time of" or "after" according
   to the context but does not mean "before" where used in
   statute requiring superintendent of public instruction to file
   a bond "when he enters upon the duties of his office," in-
   vestiture with office being a condition precedent to duty to
   furnish a bond as it will not be assumed the legislature was
   ignorant or disregardful of appropriate language to create a
   qualification for office (1 Comp. Laws 1929, § 392).

17. OFFICERS—QUALIFICATIONS—EVIDENCE—SPECIAL BONDS.

   That bond required of superintendent of public instruction was
   not a qualification for office *held,* evidenced by fact that bond
   was of special nature "conditioned upon accounting for and
   paying over any money or moneys which shall or may come
   into his hands or under his control by reason of his holding
   such office" (1 Comp. Laws 1929, § 392).

18. STATUTES—LEGISLATURE—INTENT—COURTS.

The legislature speaks its intent in the written law and a court may not give effect to an intent contrary to the language and substance of the statute as it is written.

19. SCHOOLS AND SCHOOL DISTRICTS—SUPERINTENDENT OF PUBLIC INSTRUCTION—TERM OF OFFICE—VACANCIES.

Upon death of successor elected to office of superintendent of public instruction after he had qualified by taking oath of office, term of incumbent ended at expiration of fixed term and office became vacant thereupon (Const. 1908, art. 11, § 2).

POTTER, C. J., and BUSHNELL and EDWARD M. SHARPE, JJ., dissenting.

*Quo warranto* proceedings by Harry S. Toy, Attorney General, on the relation of Eugene Elliott, against Paul F. Voelker to try title to the office of superintendent of public instruction. Submitted September 4, 1935. (Docket No. 129, Calendar No. 38,532.) Judgment of ouster October 24, 1935.

*Harry S. Toy*, Attorney General, and *Edmund E. Shepherd, Peter J. Monaghan, Jr.,* and *Oscar A. Kaufman,* Assistants Attorney General, for plaintiff.

*Burke & Burke (Edward F. Conlin,* of counsel), for defendant.

FEAD, J. This is *quo warranto* to try the title of respondent Paul F. Voelker to the office of superintendent of public instruction.

Dr. Voelker was elected to the office at the general election in April, 1933, for the term of two years, beginning July 1, 1933. At the general election in April, 1935, Dr. Maurice Keyworth was elected as his successor for the term beginning July 1, 1935. June 20th, Dr. Keyworth took and filed the constitutional oath of office. He did not give the bond provided in

1 Comp. Laws 1929, § 392. He died June 22d. On July 1st the governor, deeming the office vacant, appointed relator, Eugene Elliott, thereto. Dr. Elliott duly qualified, demanded possession of the office and Dr. Voelker refused to surrender it on the claim that he holds over under constitutional mandate.

The Constitution provides:

"A superintendent of public instruction shall be elected at the regular election to be held on the first Monday in April, nineteen hundred nine, and every second year thereafter. He shall hold office for a period of two years from the first day of July following his election and until his successor is elected and qualified." Constitution 1908, art. 11, § 2.

"Whenever a vacancy shall occur in any of the State offices, the governor shall fill the same by appointment, by and with the advice and consent of the senate, if in session." Constitution 1908, art. 6, § 10.

See, also, 1 Comp. Laws 1929, §§ 3361, 3365.

"The legislature may provide by law the cases in which any office shall be deemed vacant and the manner of filling vacancies, where no provision is made in this Constitution." Constitution 1908, art. 16, § 5.

By 1 Comp. Laws 1929, § 3350, the legislature provided:

"Every office shall become vacant, on the happening of either of the following events, before the expiration of the term of such office."

Seven clauses of events resulting in vacancy are set up, all referring to acts of or conditions affecting the incumbent. The enumeration is not exclusive. The statute does not purport to, nor could the legislature, deny the fact that a vacancy exists when an officer completes his constitutional term of office and no one is legally authorized to succeed him.

The issue here is whether Dr. Voelker's term of office expired June 30th. Two questions are presented:

1. Whether, in order to have "qualified" within the meaning of the constitution, Dr. Keyworth would need to have lived until the commencement of the term for which he was elected, i. e., to July 1st.

2. Whether the failure of Dr. Keyworth to give the bond provided in 1 Comp. Laws 1929, § 392, resulted in his failing to "qualify" before his death.

Upon the first question there are no decisions of this court in point. The apparently unanimous opinion elsewhere is that—

"When a successor has been legally elected and qualified, the prior incumbent's right to hold over thereupon ceases, and it does not revive because his successor dies after his qualification, but before the commencement of his term." Mechem on Public Officers, § 401.

See, also, 46 C. J. p. 970.

In direct point are: *State, ex rel. Elliott,* v. *Bemenderfer,* 96 Ind. 374; *State, ex rel. Johnson,* v. *Albert,* 55 Kan. 154 (40 Pac. 286); *State, ex rel. Attorney General,* v. *Seay,* 64 Mo. 89 (27 Am. Rep. 206); *People, ex rel. Sweet,* v. *Ward,* 107 Cal. 236 (40 Pac. 538); *People, ex rel. Robinson,* v. *Boughton,* 5 Col. 487.

In the Indiana case the court said:

"The contention of the relator's counsel is that as McVitty died before his term of office commenced, he was never qualified, and, therefore, no successor to the relator was ever elected and qualified. This position is not tenable. The right of McVitty to the office was vested at the time he took the oath in the manner and form required by law, and his subsequent death did not entitle the relator to hold over. A vacancy resulted for the reason that a successor to the rela-

tor had been dully elected and qualified, and this having taken place his right to hold over terminated. It cannot be legally possible that when the right to an office has once been destroyed or terminated, the subsequent death of the person who had been elected and who had duly qualified, revives the right which the election and qualification had put an end to, for the right to hold over exists only in cases where there is no legally elected and qualified successor. When the rights of the successor vest, those of the incumbent terminate, and they do vest after election and qualification according to law. This is clear on principle, but authorities are not wanting.

"The term 'qualified' as used in the statute does not mean possessed of the necessary political, mental and moral endowments, but means the acts performed after election, as taking an official oath and executing an official bond."

The Kansas court reasoned:

"Under the constitution, judicial officers hold their offices until their successors have qualified. The term 'qualify,' used in this connection, has a well-defined meaning. It means to take such steps as the statute requires before a person elected or appointed to an office is allowed to enter on the discharge of its duties. In this case, it means to file a sufficient bond to be approved by the county clerk, and take and subscribe the official oath, these being the only prerequisites required of the person elected or appointed. The successor of the defendant had been elected and qualified. He was, then, entitled to take possession of the office on the second Monday in January; and at that time, had he lived, the right of the defendant to occupy would have terminated. The rights of the parties became fixed when Parry qualified. Although the defendant had the right to fill out his unexpired term he had a right to nothing more. Parry's right to occupy the office thereafter had become full and complete. Nothing whatever remained to be done

but to assume and enter on the discharge of its duties when the day should arrive. Parry died. This event, however, conferred no new right on the defendant. The election and qualification of Parry had put an end to his right to hold over. The argument that an appointment to fill a vacancy cannot be made while there is a person in possession of the office entitled to discharge its duties may appear specious at first blush, but on anything like close consideration will readily be found fallacious.''

The opposing decisions are based upon the fact that the statute required the qualification and induction into office to be on the same day. *Ballantyne* v. *Bower,* 17 Wyo. 356 (99 Pac. 869, 17 Ann. Cas. 82); *Worley* v. *Smith,* 81 N. C. 304.

In this State there is no such statute.

By way of contrast, although there are cases to the contrary, the weight of authority is that where the successor has been elected but dies before the commencement of his term and without having qualified, no vacancy occurs but the incumbent holds over. 50 L. R. A. (N. S.) 374, note; 74 A. L. R. 486, note; *Lawrence* v. *Hanley,* 84 Mich. 399. In some of these cases the rule above stated for this case is mentioned and approved, by way of differentiation. But as such references may be considered *dicta* and the cases are not in point, they need not be specifically cited. It is sufficient to say that no case has been cited or found in which ''qualified,'' in similar provisions of Constitution or statute, means other than performance of acts required by law as a condition precedent to the right to enter upon the duties of the office, *i. e.,* to take the oath and give a bond when bond is required; or that, in the absence of special language, ''qualified'' contemplates the physical survival of the elected successor until the commencement of his term or to any future time.

Respondent, for authority on his contention that such survival is necessary to "qualify" for the office, relies upon the following language in *Conely* v. *Common Council of Detroit,* 93 Mich. 446:

"In *People, ex rel. Andrews,* v. *Lord,* 9 Mich. 227, and *Lawrence* v. *Hanley,* 84 Mich. 399, the court held that the death of a person elected to office before he qualified and entered upon the duties of his office created no vacancy, and the reason was simply because there was an incumbent of the office elected to serve until his successor should be elected, qualify, and enter upon the duties of the office."

None of these cases is in point. The *Conely Case* involved appointment or election to a newly-created office and the court held "there was no vacancy in the office, because no office or officer for that district ever existed." The language quoted by the court was wholly foreign to the issue and, apparently, was used by way of illustration or contrast or answer to counsel. Moreover, it was not stated as a rule but merely as the narration of the holdings in the *Lord* and *Lawrence Cases.*

In the *Lord Case* it was decided that, by virtue of the Constitution, where a re-elected judge of probate died before commencement of his new term, an appointee in his place held until his successor was elected and qualified, and a vacancy did not occur at commencement of the new term. The *Lawrence Case* held that where a successor to an incumbent was elected but died before commencement of his term and without taking any steps to qualify before his death, the incumbent held over. In neither case was the question of what constitutes qualification in issue nor discussed. Nor was there any mention of survival, either to actually take office or to commencement of the term, as an element of qualification.

As a statement of the ruling in the *Lord* and *Lawrence Cases* the language in the *Conely Case* was inaccurate without explanation. Literally, it would mean that to qualify for an office one must take physical possession of the paraphernalia or at least actually begin to perform the duties. Such rule would be an entire departure from the law of public officers. Respondent does not so claim.

The explanation must be that the court had in mind the particular situation in the *Lord* and *Lawrence Cases* and indulged either in tautology or in statement of cause and effect. In those cases the election of a successor was held after commencement of the regular term and while the hold over term was in operation. Consequently, immediately upon qualification the elected successor "entered upon the duties of his office." The phrase evidently was used to express the same idea as qualified or to denote its immediate effect. In any event, the language of the court must be confined to the situation before it and to which it was applied and is not authority for a wholly different set of facts.

However, it is contended that these cases indicate a trend of judicial opinion in this State, contrary to authority elsewhere, which adds survival until the commencement of the term to the otherwise accepted meaning of the word "qualified," and the trend is indicated in *Baxter* v. *Latimer,* 116 Mich. 356, 364, in which the court said:

"An office is not vacant so long as it is supplied, in the manner provided by the Constitution or law, with an incumbent who is legally qualified to exercise the powers and perform the duties which appertain to it; and, conversely, it is vacant, in the eye of the law, whenever it is unoccupied by a legally-qualified incumbent who has a lawful right to con-

tinue therein until the happening of some future event.''

This rule offers no help because, before it can be invoked, we first must determine whether Dr. Voelker, on and after July 1st, was legally qualified and authorized to exercise the powers and perform the duties of the office. We cannot assume he was so authorized, proceed to the conclusion that, therefore, there was no vacancy and, from the assumption and conclusion, return to the starting point and find that he had the authority.

''Until his successor is elected and qualified'' is not esoteric language. The phrase is common in this State and elsewhere. The words are plain and have an accepted meaning in the law. Are there any considerations of the purpose of this provision which require a different construction than the natural one of taking the oath and filing the bond, where a bond is required, and performing such other acts, if any, as the law may require as a condition precedent to the right to take the office when the term begins?

It will be conceded that the hold over term was provided for the benefit of the public, not for the private profit of the incumbent. It is urged that the intention of the framers of the Constitution was to insure an elected officer in this particular office and to circumscribe the appointive power of the governor (granted in the same Constitution and of equal dignity with all other parts of it). Why was such intention not unmistakably expressed? Why did the framers use the word ''qualified,'' which has a definite meaning in the law and expresses performance of definite acts not necessarily productive of the desired result? Why did they not provide for hold over of the incumbent in case of an equivalent vacancy, as when the successor should live until July

1st and then die before actually taking charge? Or for a special election if a vacancy should occur during the term of an incumbent?

The answer seems clear. They were framing a Constitution, the function of which is not to legislate in detail but generally to set limits upon the otherwise plenary power of the legislature. A Constitution is painted with broad strokes. It is not a complete system of law. In many respects it permits or needs supplementary legislation. Terms of office are provided in it in general language. The framers recognized the possibility of vacancies in State offices and provided for them by appointment by the governor. They did not undertake to legislate upon all possible future contingencies and vacancies but left them to operation of the general constitutional provisions, to legislative action, or their natural result. In the case of superintendent of public instruction they provided a general rule, usual in such cases to work the intended purpose, with well known language and effect, ordinarily working well in the general run of human affairs, and they added no words to indicate special privileges.

Giving effect to the hold over clause as it reads results in no absurdity nor departure from constitutional policy. The term consists of a "fixed tenure and a contingent term." *People, ex rel. Sweet,* v. *Ward, supra.* The hold over provision is purely conditional, on failure of an elected successor or his qualification. Thereby, the right of incumbent to hold over term does not end until his successor has been elected and has accepted the office by qualifying. So, barring contingencies, the office is held by an elected official. This is further than the Constitution goes in securing an elected officer in such other State offices, of at least equal importance and rank, as the lieutenant governor, secretary of State,

State treasurer, auditor general and attorney general, whose terms are fixed at two years without right of hold over. Constitution 1908, art. 6, § 1. Even the governor does not hold over in case of the death of his elected successor before the commencement of the term. Moreover, the fact that the governor is authorized by the Constitution to fill vacancies in "any of the State offices," Constitution 1908, art. 6, § 10, negatives the idea that the provision at bar should be twisted beyond its terms in order to avoid appointment by the governor.

The words "and until" in the hold over clause carry a permission but not a command of futurity. That is, they include but do not require the election and qualification of a successor or either to follow the ending of the incumbent's fixed term. If election and qualification of a successor should, or must, follow expiration of the fixed term, as in the *Lord* and *Lawrence Cases,* the incumbent would step out of the office only when the successor steps in because such result would automatically follow qualification of the elected successor. But such situation cannot govern this case because the Constitution does not provide for such subsequent election. On the contrary, it requires the election to be held in April preceding end of the incumbent's fixed term and it establishes the constitutional oath as the only act of qualification and permits it to be taken before an elected officer's term begins. Constitution 1908, art. 16, § 2. Moreover, no other qualification was then required by statute and, from time immemorial, elected officers had been permitted, and sometimes required, by statute to qualify before their terms began. The provision therefore permits both election and qualification of a successor before the end of the incumbent's term and requires no further act to be done or condition to exist to nullify the hold

over provision. It establishes one test for all conditions and works differently because the conditions, not the test, are different.

We discover no considerations which would justify amendment of the constitutional provision by construction. It is so plain in language and purpose that in fact it needs no construction. When Dr. Keyworth "qualified," if he did, he had fulfilled all constitutional conditions to vest in him the right to take the office on July 1st. Dr. Voelker's contingent right to a hold over term was thereby wholly abrogated and was not revived by Dr. Keyworth's subsequent death.

The second question is whether 1 Comp. Laws 1929, § 392, fixes the giving of a bond as a condition precedent to entering upon the duties of the office. The statute reads:

"That the superintendent of public instruction when he enters upon the duties of his office, shall give a surety company bond to the people of the State of Michigan in the penal sum of ten thousand dollars conditioned upon accounting for and paying over any money or moneys which shall or may come into his hands or under his control by reason of his holding such office. Said bond shall be filed in the office of the secretary of State and in case default shall be made in its conditions, may be enforced in the same manner as are the bonds of other State officers, the premium of said bond to be paid by the State."

At the outset, one must divest his mind of the notion that a statutory command that an officer give a bond is necessarily intended as a qualification for the office. The giving of the bond may be "a mere ministerial act for the security of the government; and not a condition precedent to his authority to act as paymaster." *United States* v. *Bradley,* 10 Peters

(25 U. S.), 343, quoted in *Speed* v. *Common Council of Detroit,* 97 Mich. 198, 209; *Glavey* v. *United States,* 182 U. S. 595, 603 (21 Sup. Ct. 891). The secretary of State and his deputy and the private secretary and executive clerk of the governor are required to give bonds for the faithful discharge of their official duties and accounting for moneys but not until after they enter upon their offices. 1 Comp. Laws 1929, § 389.

Prior to the Constitution of 1908 the superintendent of public instruction held office for a definite term. When the hold over term was provided in our present Constitution the only requirement for qualification was the constitutional oath. Evidently because of the situation involved in *People, ex rel. Johnson,* v. *Coffey,* 237 Mich. 591 (52 A. L. R. 1), then pending in this court, the above statute was enacted, Act No. 8, Pub. Acts 1927 (1 Comp. Laws 1929, § 392). Did the legislature intend to establish the giving of a bond as a condition precedent to taking the office or merely as a security?

The expression "enter upon the duties of his office" is the stereotyped phrase in our Constitution and statutes to indicate induction into office. Acts of qualification for an office are set up with the stock phrase "before entering upon the duties of his office." Thus, it is so provided as to oaths of office. Constitution 1908, art. 16, § 2; 1 Comp. Laws 1929, § 384, as to bonds of the State treasurer, § 142, auditor general, § 388, county officers, § 1418, various township officers, §§ 1009, 1017, 1020, 1026, and others cited by counsel. "Before" would be the natural and inevitable word to use if the legislature intended to establish the giving of a bond as a qualification for the office. The use of the word "when" instead of "before," especially as the balance of the stock phrase was adopted, necessarily carries

the inference that the legislature intentionally used different language to produce a different effect.

"When" has no fixed meaning. It is an adverb of time. The ordinary meaning is "at the time of" or "after," according to the context. 68 C. J. p. 244. Because of the difficulty or impossibility of doing two acts at once, and as the law does not deal in split seconds of time, the word is to be given a sensible construction in the law, as to the time of doing the acts, and sometimes it may mean a "reasonable time after." It does not mean "before." To give it the effect of "before" in the above statute plainly is unnatural and inadmissible because it is used to designate the time at which the duty to give the bond arises.

By indicating time, "when" may create a condition precedent in the respect that one act is to be done before another. The condition precedent is expressed in the clause of which "when" is a part and which is governed by it. Thus, if the legislature should provide that an officer may enter upon the duties of his office "when" he gives a bond, clearly the giving of the bond would be the condition precedent as it is the first act to be done. By the same token, and conversely, when the legislature provides that the bond shall be given "when" the officer enters upon the duties of his office, taking the office is the first act to be done. Consequently, according to the language, the duty to furnish the bond would not have arisen until after Mr. Keyworth had become invested with the office and the remedy for failure to give it would have been removal.

It is suggested that the use of the word "when" instead of "before" was inadvertent on the part of the legislature. The bill took the regular course through the legislature. The legislature gave at

least sufficient attention to it to amend it before passage. H. J. 1927, p. 248. The title of the act is:

"An act to provide that the superintendent of public instruction shall give a bond to the people of the State of Michigan."

It is interesting to compare this title with that of the act requiring the auditor general and commissioner of the State land office to give bonds. 1 Comp. Laws 1929, § 388:

"An act requiring certain State officers to give bonds before entering upon their official duties,"

and of an act which permits the giving of the bond after entering upon the duties of the office. 1 Comp. Laws 1929, § 389:

"An act requiring the secretary of State and the deputy secretary of State and the private secretary and executive clerk of the governor to give bonds for the faithful discharge of their official duties."

It cannot be assumed that the legislature was ignorant or disregardful of appropriate language to create a "qualification" for office.

Of determinative force, however, is the fact that the bond, in its substance, bears the marks of a special and not of a qualifying bond. By 2 Comp. Laws 1929, § 7350, the superintendent of public instruction is required to deliver to his successor:

"All property, books, documents, maps, records, reports, and all other papers belonging to his office, or which may have been received by him for the use of his office."

The bond does not require accounting for anything except moneys. Nor does it cover faithful performance of the duties of the office as is common with officers' bonds. Nor is it required to be ap-

proved by anyone. It is hardly reasonable to hold that the legislature intended the bond to fit into the groove of official qualifying bonds when it departed radically and inconsistently from both the appropriate language and the conditions consistently employed by the lawmakers to fit a bond into the groove.

The legislature speaks its intent in the written law. This court may not find and give effect to an intent contrary to the language and substance of the statute as it is written. It must be held that the bond required by the statute was not provided as a qualification for the office.

In my opinion, Dr. Keyworth qualified for the office before his death by taking the oath and, thereupon, the term of Dr. Voelker ended on June 30th. Consequently, the office was vacant on July 1st.

Judgment of ouster against respondent will enter, but without costs.

North, Wiest, and Butzel, JJ., concurred with Fead, J.

Potter, C. J. (*dissenting*). The attorney general, upon the relation of Dr. Eugene Elliott, filed an information in the nature of *quo warranto* to try the title of the respondent, Dr. Paul F. Voelker, to the office of superintendent of public instruction.

Dr. Voelker was elected to the office at the general election in April, 1933, for the term of two years beginning July 1, 1933; and at the general election in April, 1935, Dr. Maurice R. Keyworth was elected to be his successor for the term beginning July 1, 1935.

On June 20, 1935, Dr. Keyworth took and filed the constitutional oath of office, but did not give bond as provided in the statute. 1 Comp. Laws 1929, §§ 390, 392. He died June 22, 1935; and July 1, 1935,

the governor appointed relator, Dr. Eugene Elliott, to such office. Dr. Elliott qualified, demanded possession of the office, and Dr. Voelker refused to surrender it to him on the claim he held over under the constitutional mandate.

The question involved is, whether Dr. Voelker is entitled to continue to hold the office of superintendent of public instruction, or whether Dr. Elliott is entitled to hold the same.

1. We are dealing with the construction of the Constitution and the statutes passed in pursuance thereof. The Constitution provides for the election of a superintendent of public instruction, fixes the time of election, and says:

"He shall hold office for a period of two years from the first day of *July following his election* and until his successor is elected and qualified." Constitution 1908, art. 11, § 2.

It says:

"Whenever a vacancy shall occur in any of the State offices, the governor shall fill the same by appointment, by and with the advice and consent of the senate, if in session." Constitution 1908, art. 6, § 10.

It says:

"The legislature may provide by law the cases in which any office shall be deemed vacant and the manner of filling vacancies, where no provision is made in this Constitution." Constitution 1908, art. 16, § 5.

The legislature, in pursuance of the constitutional authority contained in the Constitution of 1850, which, by article 8, § 3, provided:

"Whenever a vacancy shall occur in any of the State offices, the governor shall fill the same by ap-

pointment, by and with the advice and consent of the senate if in session."

and by article 4, § 37, provided:

"The legislature may declare the cases in which any office shall be deemed vacant, and also the manner of filling the vacancy, where no provision is made for that purpose in this Constitution."

passed Act No. 172, Laws of 1851, which was amendatory of the Revised Statutes of 1846, ch. 15, § 3, and which still stands as 1 Comp. Laws 1929, § 3350, as follows:

"Every office shall become vacant, on the happening of either of the following events, before the expiration of the term of such office:
"1. The death of the incumbent;
"2. His resignation;
"3. His removal from office;
"4. His ceasing to be an inhabitant of this State; or, if the office be local, of the district, county, township, city or village, for which he shall have been elected or appointed, or within which the duties of his office are required to be discharged;
"5. His conviction of any infamous crime, or of any offense involving a violation of his oath of office;
"6. The decision of a competent tribunal, declaring void his election or appointment; or,
"7. His refusal or neglect to take his oath of office, or *to give or renew any official bond,* or *to deposit such oath or bond in the manner and within the time prescribed by law: Provided,* That the supervisor of any township, in which the office of a township treasurer or justice of the peace may become vacated by operation of this act, shall immediately transmit to the county clerk of the county in which such township treasurer or justice of the peace resides, a notice in writing, officially signed by

him, informing the county clerk that the office of such township treasurer or justice of the peace is vacated.''

It seems to be the established rule of construction that,

''When the Constitution clearly enumerates the events that shall constitute a vacancy in a particular office, we must suppose all other causes of vacancy excluded; especially when this construction can lead to no injurious consequences.'' *People, ex rel. Melony,* v. *Whitman,* 10 Cal. 38.

The same rule applies to the construction of a statute. This is but an application of an ancient and well-settled rule of statutory construction, that an express enumeration of certain things is an implied exclusion of things not enumerated; a rule so well fixed that the fathers inserted in the Constitution of the United States, at the conclusion of the bill of rights, the ninth amendment:

''The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people.''

The facts involved in the instant case do not bring it within the language, spirit or intent of the statute; and hence no vacancy existed in the office of superintendent of public instruction and Dr. Voelker continued to hold over under the constitutional provision above quoted prescribing his term of office.

''The term of the office is fixed at two years, certain, with a contingent extension. When this contingency happens, this extension is as much a part of the entire term as any portion of the two years.'' *People, ex rel. Melony,* v. *Whitman, supra.*

See, also, *Commonwealth, ex rel. Broom,* v. *Han-*

*ley,* 9 Barr. (9 Pa.) 513; *Ballantyne* v. *Bower,* 17 Wyo. 356 (99 Pac. 869, 17 Ann. Cas. 82).

The legislature, also, in pursuance of the constitutional authority above quoted, by Act No. 159, Laws of 1851, which now stands as 1 Comp. Laws 1929, § 3381, provided:

"That whenever, from any cause, there shall be a vacancy in the office of  *   *   *  superintendent of public instruction  *   *   *  the governor shall have power to appoint some suitable person to fill such vacancy, and the person so appointed shall take the same oath of office, and give a bond in the same manner as provided by law for the officer for whose vacancy he shall be so appointed; and such person shall hold such office  *   *   *  until his successor shall be elected and qualified under the Constitution of this State, or until the close of the next session of the legislature."

This statute, however, goes back to the constitutional provision that the legislature may provide by law the cases in which any office shall be deemed vacant, and is subject to and in furtherance of the constitutional authority of the governor, whenever a vacancy occurs in any of the State offices, to fill the same by appointment.

An office is vacant whenever it is unoccupied by a legally qualified incumbent, who has a lawful right to continue therein until the happening of some future event. *Mayes* v. *Bassett,* 17 N. M. 193 (125 Pac. 609).

"A 'vacancy in office,' within the meaning of the law, can never exist when an incumbent of the office is lawfully there and is in the actual discharge of official duty." *Holtan* v. *Beck,* 20 N. D. 5 (125 N. W. 1048).

"An existing office without an incumbent is vacant." *Commonwealth, ex rel. Barratt,* v. *McAfee,* 232 Pa. 36 (81 Atl. 85).

"The term 'vacancy' means an empty space, a place unfilled, and when applied to an office it means the state of being destitute of an incumbent, or a want of the proper officer to officiate in such office." *Richardson* v. *Young,* 122 Tenn. 471 (125 S. W. 664).

"The words 'vacancy' and 'occupancy' imply the opposite." *Danels* v. *Farm Property Mutual Ins. Ass'n of Des Moines,* 213 Iowa, 352 (239 N. W. 24).

" 'Vacancy in office' means the absence of an incumbent of the office who has been legally inducted therein." *State, ex rel. Plunkett,* v. *Miller,* 162 Miss. 149 (137 South. 737).

No vacancy occurred in the office of superintendent of public instruction. Dr. Voelker was, at the time of the appointment of Dr. Elliott, in office.

"Vacancy in an office means the want of an incumbent at the time." *State* v. *Johns,* 3 Ore. 533, 537 (approved in *Baxter* v. *Latimer,* 116 Mich. 356).

July 1, 1935, Dr. Voelker was in office, constitutionally qualified and entitled to hold that office until his successor was elected and qualified.

2. If Dr. Keyworth was a successor of Dr. Voelker, if he was elected, if he had taken the oath of office, if he would have been entitled to the office without doing anything further than he had done had he lived to July 1, 1935, if title to the office of superintendent of public instruction for the ensuing term was vested in him, then, had he lived, he could have resigned the office of superintendent of public instruction at any time after June 22, 1935, and prior to July 1, 1935. If he could not have resigned

the office, then the office and the right thereto was not completely vested in him, in which case there was no vacancy caused by his death.

"One elected to an office cannot resign it, until after he has qualified, and entered into possession of it." Throop on Public Officers, § 413.

See, also, *Miller* v. *Board of Supervisors of Sacramento County,* 25 Cal. 93.

One cannot resign that which he has no right to occupy. *Queen* v. *Blizard,* L. R. 2 Q. B. 55 (15 L. T. 242); *In re Corliss,* 11 R. I. 638 (23 Am. Rep. 538); Throop on Public Officers, § 413.

In *Stocking* v. *State,* 7 Ind. 326, the court reviewed plaintiff-in-error's conviction of murder. It was urged his conviction was void because the judge who presided was not properly the judge of the court. It was said:

"There is no technical nor peculiar meaning to the word 'vacant' as used in the Constitution. It means empty, unoccupied; as applied to an office, without an incumbent. * * * An existing office, without an incumbent, is vacant, whether it be a new or an old one."

In *Miller* v. *Board of Supervisors of Sacramento County, supra,* Miller was elected public administrator for term to begin the first Monday in March. On the first Monday in March, before taking the oath of office, or giving a proper bond, he resigned. March 15th he gave notice he withdrew his resignation, took the oath of office, and tendered his official bond which was rejected because he had resigned. He brought certiorari. It is said:

"At the time the petitioner undertook to resign the office of public administrator he was not in fact invested with that office. Before he could become

so, he was required by law to take the constitutional oath, and execute with sureties a proper bond to be approved by the board.  *  *  *  Having the mere naked right to the office of public administrator, the taking of the constitutional oath of office and executing the bond prescribed were conditions which, fully completed, were essential to the constituting of the petitioner such officer.  *  *  *  If the petitioner had not become the incumbent of the office which he was elected to fill, he had no office to resign.''

''An incumbent of an office is one who is legally authorized to discharge the duties of that office.'' *State, ex rel. Peters,* v. *McCollister,* 11 Ohio, 46.

In *Queen* v. *Blizard, supra,* Lord Chief Justice Cockburn said:

''A man cannot resign that which he is not entitled to, and which he has no right to occupy.''

This language was quoted with approval in *Re Corliss, supra.*

Not being in the possession of the office; not being able to resign the same, because one cannot resign an office he has no right to occupy; we must conclude Dr. Keyworth never had vested in him title to the office of superintendent of public instruction, and consequently Dr. Voelker is entitled to hold over under the constitutional provision above quoted.

3. The Constitution does not provide that one shall hold the office of superintendent of public instruction until some one competent to fill the office is elected and qualified. The constitutional language is ''until his successor is elected and qualified.''

''The word 'successor' is used in our statutes, as in the books, in the twofold sense of the one entitled to succeed, and the one who has in fact succeeded.'' *People, ex rel. Sweet,* v. *Ward,* 107 Cal. 236 (40 Pac. 538).

Dr. Keyworth was elected, but he died June 22, 1935, prior to the beginning of the term of office for which he was elected. He never entered upon the performance of his duties as superintendent of public instruction; never had the right to enter upon and perform them; never occupied the office; and never vacated it. He could not well vacate that which he never occupied. He never succeeded Dr. Voelker in the office of superintendent of public instruction; never was in a position to succeed him; never had a right to succeed him; and never was his successor. Had Dr. Voelker vacated the office July 1, 1935, he would not have been succeeded by Dr. Keyworth who was already dead. A "successor" is one who follows or comes into the place of another. Dr. Keyworth did not follow Dr. Voelker, was not in a position to come after him in office, or to come into his place. In fact, there is no claim that Dr. Keyworth was the actual successor of Dr. Voelker. On the other hand, it is the claim that Dr. Elliott is entitled to be the successor of Dr. Voelker. Under the clear language of the Constitution, how can one who was never in office and never in a position to take the office be said to be the successor of one in office?

In *Berry* v. *Berry,* 165 Miss. 472 (144 South. 695), a controversy arose over the office of justice of the peace. A justice of the peace was elected to hold office for four years or until his successor was qualified. The statute of Mississippi provided that if a justice failed to qualify, or any officer held over after his regular term of office had expired, a vacancy in such office should occur which might be filled by appointment. It was held, under this statute, that in a strict sense there was no vacancy so long as there was a lawful incumbent; but the statute prescribing when a vacancy in office should occur recog-

nized the statutory right of an incumbent to hold over but expressly declared that in case he held over *there should be a vacancy for the purpose of appointment and qualification of a successor.* A similar question was before the court in *Kline* v. *McKelvey,* 57 W. Va. 29 (49 S. E. 896).

The rule stated in *State, ex rel. Elliott,* v. *Bemenderfer,* 96 Ind. 374; *State, ex rel. Attorney General,* v. *Seay,* 64 Mo. 89 (27 Am. Rep. 206); *Gosman* v. *State, ex rel. Schumacher,* 106 Ind. 203 (6 N. E. 349), and similar cases, is:

"Where, however, a successor has been elected and qualified, the right of such successor to the ensuing term vests immediately, and the contingent right of the incumbent is thereby defeated. In such a case the death of the officer-elect before the commencement of the term for which he was elected does not revive the right of the incumbent to hold over. A vacancy results. The title to the office for the succeeding term having vested in another, the owner of the term having died, and the contingent right of the incumbent having effectually ended, the office can only be filled by a resort to the means provided for supplying the vacancy." (*Gosman v. State, ex rel. Schumacher, supra.*)

This is not true. Because someone is elected and qualified for the office does not make him a successor. Where a person is elected and qualifies for the office, the right of such successor to the ensuing term may vest immediately. But there is a difference between the "right to begin a term" and "the beginning of a term." The right to begin a term upon the happening of an expected contingency does not make him the successor of the person in office. The right of the incumbent is not contingent, but absolute, until the expiration of his term. Upon the expiration of his term of office, if his successor has

been elected and has qualified, then he will be succeeded, or the person who is his successor has a right to succeed him. But if the person who is elected and qualified dies before the commencement of the term of office for which he was elected, he is not a *successor* and does not *succeed* the person in office who continues to hold over until his successor is elected and qualified. No vacancy results. Under the law of this State, one elected and qualified to hold the office is in charge of the office. The person elected and qualified to succeed him has never taken the office, never entered upon the duties of the office, and his death does not vacate the office. The reasoning of this and similar cases is in plain disregard of the provisions of the Constitution and, in this State, of the repeated decisions of the court.

In *State, ex rel. Attorney General,* v. *Seay, supra,* the facts giving rise to the litigation were substantially similar to those in controversy here; but, under the Constitution of Missouri, the governor, upon being satisfied that a vacancy exists, is directed to issue his writ of election to fill the vacancy.

"The governor shall, upon being satisfied that a vacancy exists, issue a writ of election to fill such vacancy." Constitution of Missouri 1865, art. 5, § 14.

This language plainly *confers the power and authority of determining the question whether a vacancy exists upon the governor,* and his determination is final and conclusive. No such provision is found in the Constitution of Michigan. In this case, the court of Missouri disagreed with the holding of this court in *People, ex rel. Andrews,* v. *Lord,* 9 Mich. 227, which established a rule based upon sound sense which has been repeatedly followed by this court.

In *Gosman* v. *State, ex rel. Schumacher, supra,* which followed the Missouri case above cited, the Constitution provided that a person elected to the office there involved should hold over until his successor was elected and qualified. The Constitution also provided such officer should be ineligible to the office more than 8 years in any period of 12 years. The person who was claiming by virtue of the constitutional right to hold over had already served 8 years continuously and could not further hold office without violating the constitutional prohibition against holding office for more than 8 years in any period of 12 years.

In *People, ex rel. Sweet,* v. *Ward, supra,* the same rule was followed, but the court said:

"The incongruity of declaring a person an incumbent who has never taken possession or entered upon the discharge of the duties of an office, and who could not be chargeable with misfeasance or malfeasance, is apparent. But the learned justice who wrote the opinion in this case was constrained somewhat by the earlier decisions of the court, and by his own conviction afterward expressed in *Rosborough* v. *Boardman,* 67 Cal. 116, that a vacancy could not exist unless it was one contemplated and declared by Political Code, § 996. The legitimate meaning of the word 'incumbent' was, therefore, somewhat strained to meet the substantial ends of justice, the incongruity resulting from the failure of the legislature to discriminate in the use of descriptive terms."

The gist of this case is in the language:

"It is a general rule, founded upon necessity, to prevent vexatious embarrassment in the public service, that an officer will not be considered out of office merely by the limitation of his term. In the absence of a statute authorizing or requiring him to

hold until the qualification of his successor a vacancy arises upon the expiration of his term; but, notwithstanding, the law, for the public convenience, empowers him to continue to occupy his office. But one so holding over acquires no right to a new, fixed, and definite term. He is a makeshift merely, *locum tenens,* temporarily filling a public office which it is inexpedient to permit to stand without an incumbent.''

In other words, the court enforced the provision of the Political Code, § 879, which provides that such officer must continue to discharge the duties of his office, although his term has expired, until his successor has qualified, recognizing the force of Political Code, § 878, which provides:

''Every office of which the duration is not fixed by law, is held at the pleasure of the appointing power.''

Ward was elected district attorney for the term beginning January 2, 1893. At the general election in November, 1894, William Darby was elected to succeed him, and Darby qualified before the beginning of his term of office, and died December 15, 1894. January 2, 1895, the personnel of the board of supervisors having changed, ''the board as then constituted declared a vacancy to exist in the office of district attorney, and appointed the relator to fill the same during the term for which Darby had been elected.''

It was held that by the county government act of 1891, § 60, and Political Code of California, § 879, there was a vacancy in the office and the board of supervisors could fill it.

Ward was elected for a fixed term and, under Political Code, § 879, he was obliged to continue to discharge his duties, although his term had expired,

until his successor was qualified. His successor could be appointed. He was appointed. Ward's term had expired. The appointee qualified, and that terminated Ward's right and his duty to discharge the duties of his office although his term had expired. Ward held for a fixed term, and thereafter for a period not fixed by law and pursuant to Political Code, § 878, "at the pleasure of the appointing power."

*State, ex rel. Johnson,* v. *Albert,* 55 Kan. 154 (40 Pac. 286), involved a claimed vacancy in the office of probate judge. There, the claimed successor had been elected, filed the requisite oath and bond, and then died before the beginning of his term. The court held there was a vacancy, relying upon *State, ex rel. Attorney General,* v. *Seay, supra,* and *State, ex rel. Elliott,* v. *Bemenderfer, supra,* neither of which, under our Constitution and laws, has any application to the point here involved.

In *People, ex rel. Robinson,* v. *Boughton,* 5 Col. 487, it was held that the facts and the constitutional and statutory provisions there involved brought the case fairly within the rule laid down by the supreme court of Missouri in *State, ex rel. Attorney General,* v. *Seay, supra.*

*People, ex rel. Illinois Midland R. Co.,* v. *Supervisor,* 100 Ill. 332, so far as it relates to any question important here, merely points out that under the constitution and law of Illinois the public officers named therein hold office until their successors shall be qualified and that, even though an officer who is elected and qualified may resign, he still, under the Constitution and laws of that State, holds office until his successor is qualified.

These cases arose under constitutional and statutory provisions different from ours. What appears

to be the sophistical and unsound reasoning contained therein must be considered with reference to the plain provisions of the Constitutions and statutes there involved; and, when so construed, they do not all militate against the rule established by this court, which is the rule which must, at least should, govern here.

The precise point in controversy in this case is whether there was a vacancy in the office of superintendent of public instruction on the 1st day of July, 1935.

If there was such a vacancy, how did it occur? Dr. Keyworth never entered upon the duties of the office, he never occupied it, and consequently could never vacate it. A vacancy is a place which is empty. The term "vacancy" is applied to cases where an office is not filled. But, under the Constitution of this State, Dr. Voelker was in the office on the 1st day of July, 1935, and holding under a constitutional provision which authorized him to hold until that time and until his successor was elected and qualified.

One cannot vacate an office which he has never filled any more than he can vacate a house which he has never occupied. An office becomes vacant when it is unoccupied; when there is no one who has a legal right to hold it.

4. Though the superintendent of public instruction is not a disbursing officer of the State, his official acts may affect the rights and interests of other individuals and of communities. His general duties are prescribed by 2 Comp. Laws 1929, § 7331, and among the duties prescribed by this statute is that of requiring boards of education to observe the laws relating to the public schools. It is his duty to require boards of education to account for and pay over to the credit of the school district all moneys

legally expended or otherwise disposed of, and to compel such observance and such accounting by appropriate legal proceedings instituted in courts of competent jurisdiction by the attorney general; to examine and audit the official records and accounts of any school district, and to require an accounting from the treasurer of any school district when deemed necessary; to require all school districts to maintain school or provide educational facilities for all children resident in the district; to require school boards to carry out recommendations relative to the safety of school buildings, equipment and appurtenances in the interest of the public health and safety of school children; to do all things necessary to promote the welfare of the public schools and public educational institutions of the State; and to account to the governor for the performance of his duties, and to make recommendations as to the future. It is his duty to appoint a time and place for holding teachers' institutes in the several counties of the State, and to report to the governor and the legislature. In addition to these general duties, he is to apportion the primary school fund (2 Comp. Laws 1929, § 7339, as amended by Act No. 17, Pub. Acts 1931), and file a statement of that apportionment with the auditor general who is to draw his warrants in accordance with such apportionment (2 Comp. Laws 1929, § 7347). The superintendent of public instruction may demand of the county clerk of the county in which a teachers' institute is held such sum as may be needed to defray the cost and expense thereof, and cause such sum to be drawn from the county treasury, not exceeding, however, the amount on hand and in his office (2 Comp. Laws 1929, § 7672); and he may cause money to be drawn for the education of blind, deaf and crippled children (2 Comp. Laws 1929, § 7560); and

institute proceedings in proper cases for the dissolution of corporations organized for educational purposes (2 Comp. Laws 1929, § 10108).

Each of these things affects, or may affect, the rights and interests of other people of the State. It is to secure the performance of these duties that the legislature passed Act No. 311, Pub. Acts 1905 (1 Comp. Laws 1929, §§ 390, 391); and Act No. 8, Pub. Acts 1927 (1 Comp. Laws 1929, § 392), which provides:

"That the superintendent of public instruction when he enters upon the duties of his office, shall give a surety company bond to the people of the State of Michigan in the penal sum of ten thousand dollars conditioned upon accounting for and paying over any money or moneys which shall or may come into his hands or under his control by reason of his holding such office."

This bond covers accounting for any and all moneys which shall or may come into the hands of the superintendent of public instruction or which may come under his control; and for paying over any money or moneys which shall or may come into the hands of the superintendent of public instruction or under his control.

Certainly such bond is not given for any other purpose than to secure the performance by the superintendent of public instruction of his official duties in accordance with the Constitution and laws of the State so far as accounting for and paying over money is concerned.

"Public officers to whom are entrusted the collection and custody of public money, and public ministerial officers whose actions may affect the rights and interests of individuals, are usually required to secure the faithful and proper discharge of their

duties by giving bonds conditioned to that effect.''
Mechem on Public Offices and Officers, § 263.

''Whenever an act to be done under a statute, is
to be done by a public officer, and concerns the pub-
lic interest, or the rights of third persons, which
require the performance of the act, then it becomes
a duty in the officer to do it.'' *Newburgh Turnpike
Co.* v. *Miller,* 5 Johns. Ch. (N. Y.) 101, 113 (9 Am.
Dec. 274).

See, also, *Smith* v. *State,* 1 Kan. 365, 391 (citing
*Mayor, etc., of the City of New York* v. *Furze,* 3
Hill [N. Y.], 612; *Cutler* v. *Howard,* 9 Wis. 309).

''The term 'qualify' as used in this connection
has a well defined meaning. It means to take such
steps as the statute requires before a person elected
or appointed to an office is allowed to enter on the
discharge of his duties. In this case, it means to file
a sufficient bond to be approved by the county clerk,
and take and subscribe the official oath, these being
the only prerequisites of the person elected or ap-
pointed.'' *State, ex rel. Johnson,* v. *Albert, supra.*

''Oaths and bonds (when bond is required) con-
stitute the only guarantees of official fidelity; the
one appealing to the conscience and the other to the
purse. It is, therefore, the unavoidable conclusion,
unless both the spirit and the letter of the law are
to be construed away, that no one of the respondents
is a legally constituted school trustee for said city.''
*Childrey* v. *Rady,* 77 Va. 518.

''The term 'qualified,' as used in the statute, does
not mean possessed of the necessary political,
mental, and moral endowments, but means the acts
performed after election, as taking the official oath
and executing an official bond.'' *State, ex rel. El-
liott,* v. *Bemenderfer, supra.*

See, also, *Bradley* v. *Clark,* 133 Cal. 196 (65 Pac.
395).

''It cannot be known until the new officer is 'quali-
fied' that he will ever enter upon his duties, and until

then all the duties of the office, òf every kind devolve upon the incumbent.'' *Wells* v. *Mayor & City of Atlanta,* 43 Ga. 67.

''It cannot be doubted that the giving of the bond is one of the requirements for qualifying.'' *Ballantyne* v. *Bower, supra.*

By 1 Comp. Laws 1929, § 390, the superintendent of public instruction may give a surety bond in a surety company authorized to do business in this State; and, while it is said that there is no requirement this bond shall be approved, it is approved by the commissioner of insurance when the surety company giving it is authorized to do business in the State. No justification by the surety on the bond is necessary. Such bond is to be filed and kept in the office of the secretary of State.

The statute requires the giving of the bond by the superintendent of public instruction ''when he enters upon the duties of his office;'' that is, at the time he enters upon the duties of the office. As said in *Worley* v. *Smith,* 81 N. C. 304:

''The qualification and induction are directed to be done at one and the same time.''

At least, under the law of this State, entering upon the duties of the office and giving the statutory bond are, and must be, contemporaneous, correlative and interdependent acts. No one may enter the office without giving the statutory bond. No one need give the statutory bond except at the time he enters upon the duties of the office. Until the statutory bond should be filed, Dr. Keyworth could not have entered upon the duties of the office; and until that time, Dr. Voelker's duty was to carry out and perform the duties of the office. Dr. Keyworth never filed or tendered for filing the statutory bond, and never

qualified to hold the office of superintendent of public instruction or to perform the duties of that office; and, hence, his death before qualification caused no vacancy in that office.

5. The Constitution fixes the official term of the superintendent of public instruction for two years "and until his *successor* is *elected* and qualified."

Dr. Keyworth died June 22, 1935. Dr. Voelker was holding the office of superintendent of public instruction at that time. His term of office had not expired. Who is his proposed successor? Not Dr. Keyworth, but Dr. Elliott. Dr. Keyworth never entered upon the duties of the office. He never performed the duties thereof. He never was an incumbent of the office. He was never legally inducted therein. Dr. Voelker's successor must have been *elected* in order to be entitled to the office. He must be *elected* and *qualified.* Dr. Elliott has never been elected. How, under a constitutional provision like ours, may Dr. Elliott be held to be entitled to the office of superintendent of public instruction? Only if we construe the constitutional provision for *election* and *qualification* to mean *appointment* and *qualification.* But the term *elected* carries the idea of a vote, generally popular, sometimes more restricted, and cannot be held to be synonymous with any other mode of filling the position (*State, ex rel. Clarke,* v. *Irwin,* 5 Nev. 111, 121; *Magruder* v. *Swann,* 25 Md. 173, 214), while *appointment* means the designation of a person, by the persons having authority therefor, to discharge the duties of some office or trust (1 Bouvier Law Dictionary [Rawle's 3d Rev.], p. 215).

*Appointment* and *election* are not synonymous. They are separate and distinct functions. An *election* is selection by all of a class. *Appointment* is

made generally by one or several. The one is the exercise of a sovereign power; the other of a delegated power. We cannot consistently, with the ordinary use of the English language, construe the constitutional provision for election to mean appointment; and such has been the construction placed upon our Constitution from the beginning.

"The framers of the Constitution unquestionably understood that there was a difference in filling an office by *appointment,* and by *election.* And where either of these words are used in a statute law, under that Constitution, this court ought not, unless for strong and powerful reasons, to give to the word a different meaning from that which it plainly imparts, as used in that instrument." *State, ex rel. Peters,* v. *McCollister, supra.*

6. Whatever may be the rule elsewhere under the Constitutions or laws there in force, the rule adopted by this court in accordance with the spirit of the Constitution which provides:

"All political power is inherent in the people." Constitution 1908, art. 2, § 1.

is plainly declared in *People, ex rel. Andrews,* v. *Lord, supra; Lawrence* v. *Hanley,* 84 Mich. 399; *Conely* v. *Common Council of Detroit,* 93 Mich. 446; *Baxter* v. *Latimer,* 116 Mich. 356.

In *People, ex rel. Andrews,* v. *Lord, supra,* the Constitution provided that the judge of probate should hold office for four years and until a successor was elected and qualified. The court said:

"His term of office did not expire on the first day of January, 1861, unless some one elected and qualified *was then ready to take the office.*"

In *Lawrence* v. *Hanley, supra,* the court commented extensively upon the opinion in *People, ex rel. Andrews,* v. *Lord, supra,* and said:

"It was held that Van Valkenburgh, who stood in the place of North, the deceased judge, would hold the office until his successor was elected and qualified, and that his term did not expire on the 31st day of December, 1860, and that Lord's appointment was therefore void. And it was also held that it was not a technical vacancy, but a case where a new election was expressly provided for by paragraph 3, § 138, How. Stat., heretofore quoted; that the election in the fall had fallen through by the death of the person elected before the time arrived when he could qualify and take his office; and that the appointment of Lord was made when Van Valkenburgh had an existing title to the office, and therefore void."

It was contended in that case, as it is contended here, that the principle laid down in the *Lord Case* should not be followed, but the court said:

"We think that the construction was correct, and in harmony not only with the Constitution and laws, but with the policy of our State, which from the beginning has inclined most strongly in favor of elections by the people of local officers, as against the appointment of the same by the governor or the legislature."

In *Conely* v. *Common Council of Detroit, supra,* it is said:

"In *People, ex rel. Andrews,* v. *Lord,* 9 Mich. 227, and *Lawrence* v. *Hanley,* 84 Mich. 399, the court held that the death of a person elected to office before he qualified and entered upon the duties of his office created no vacancy, and the reason was simply because there was an incumbent of the office elected to serve until his successor should be elected, qualify, and enter upon the duties of the office."

In *Baxter* v. *Latimer, supra,* it is said:

"An office is not vacant so long as it is supplied, in the manner provided by the Constitution or law,

with an incumbent who is legally qualified to exercise the powers and perform the duties which appertain to it; and, conversely, it is vacant, in the eye of the law, *whenever it is unoccupied by a legally-qualified incumbent* who has a lawful right to continue therein until the happening of some future event."

The court cited with approval *People, ex rel. Andrews, v. Lord, supra; Lawrence v. Hanley, supra; Conely v. Common Council of Detroit, supra.*

There was no vacancy in the office of superintendent of public instruction so long as there was a legally qualified incumbent of the office. There was no vacancy because the office was not unoccupied. There can be no such thing, under the law of this State, as a vacancy in an office which is occupied. *Baxter v. Latimer, supra.*

These cases, it seems to me, put at rest the question here involved, and, unless they are to be overruled and a rule of constitutional construction at variance therewith adopted, they must be held to govern.

As a result of his election, Dr. Keyworth never had anything except an inchoate and contingent right to occupy the office of superintendent of public instruction if he lived to July 1, 1935. An unforeseen contingency intervened so that he never became superintendent of public instruction, and never entered upon the duties of the office.

One is not a successor of a public officer who does not succeed him in office. Dr. Keyworth was never invested with the duties of the office; and was not divested of them by his death. He was never in office, and consequently did not go out of office at his death. He never had title thereto and, therefore, could not have resigned what he did not hold. He never occupied the office and, therefore, could not vacate that which he never occupied.

The writ of ouster should be denied; but without costs, a public question being involved.

Bushnell, J., concurred with Potter, C. J.

Bushnell, J. (*dissenting*). Dr. Keyworth died before entering upon the duties of his office. Dr. Voelker, the incumbent, was elected to "hold office for a period of two years * * * and until his successor is *elected* and *qualified.*" Constitution 1908, art. 11, § 2. Dr. Elliott, the relator, has never been elected to the office.

"In *People, ex rel. Andrews, v. Lord,* 9 Mich. 227, and *Lawrence* v. *Hanley,* 84 Mich. 399, the court held that the death of a person elected to office before he *qualified* and *entered* upon the duties of his office created no vacancy, and the reason was simply because there was an incumbent of the office elected to serve until his successor should be *elected, qualify* and *enter* upon the duties of the office." *Conely* v. *Common Council of Detroit,* 93 Mich. 446.

"In a majority of jurisdictions, the rule obtains that the death or disability of an officer-elect before qualifying does not create a vacancy in the office which may be filled by the appointing power, since he never occupied the office, and that under the provision that an incumbent shall hold his office until his successor is elected and qualified the prior incumbent is entitled to continue in the office until the election and qualification of his successor." 74 A. L. R. 486.

The authorities cited in *Conely* v. *Common Council of Detroit, supra,* are classified by the writer of the text just quoted with those of Arizona, Arkansas, Idaho, Indiana, Iowa, Maine, Minnesota, Missouri, North Carolina, Ohio, Oklahoma, Pennsylvania, Rhode Island, South Dakota, Tennessee, Utah,

Washington and Wyoming. For citation of such authorities, see 74 A. L. R. 486 *et seq.*

The respondent devotes much space in his brief to an argument headed:

"This incumbent is in possession, no elected and qualified successor has appeared to take over the office and none of the facts necessary to constitute a vacancy under the statutory definition have occurred."

I adopt that view as well as the following statement:

"Certainly physical presence and existence are the chief qualifications for office."

I take this position because I believe it to be the law of this State as well as that of the majority of the others who have had occasion to pass upon the question. To hold otherwise we must overrule *People, ex rel. Andrews,* v. *Lord,* 9 Mich. 227, and hold for naught the language of Mr. Justice CAMPBELL who said in reference to a like situation.

"His term of office did not expire on the first day of January, 1861, unless *some one elected and qualified was then ready to take the office.*"

Section 3350, 1 Comp. Laws 1929, applies only to vacancies in the event of the happening of certain events before the expiration of the term of such office. The governor's appointment being made on July 1st was not to a vacancy occurring before the expiration of the term.

For these additional reasons, I concur in the result stated by Mr. Justice POTTER.

EDWARD M. SHARPE, J. (*dissenting*). The issue involved in this cause is whether on July 1, 1935, there was a vacancy in the office of superintendent of pub-

lic instruction. There could be no vacancy if there was a legally qualified incumbent of the office. In *People, ex rel. Andrews,* v. *Lord,* 9 Mich. 227, this court held that the death of a person elected to office before he *qualified* and *entered* upon the duties of his office created no vacancy. This case was decided under Constitution of 1850, art. 6, § 13, which provides:

"The judge of such court (probate) shall be elected by the electors of the county in which he resides, and shall hold office for four years, and until his successor is elected and qualified."

Section 2 of article 11, Constitution of 1908, provides:

"He (superintendent of public instruction) shall hold office for a period of two years from the first day of July following his election, and until his successor is elected and qualified."

It is to be noted that the particular provision of the Constitution of 1850 is almost identical to the provision of the Constitution of 1908. It appears to me that the construction placed upon the constitutional provision in the 1850 Constitution should have great weight with this court in construing a similar provision of the Constitution of 1908.

"Where a particular interpretation has been placed on a statute by the court and the legislature at its subsequent meetings has left the statute materially unchanged, it is presumed that the legislature has acquiesced in that interpretation." 59 C. J. p. 1012.

"It will be presumed that a statute was passed with the intent that it should have the same effect as that given by the courts to previous similar statutes." 59 C. J. p. 1011.

Under this interpretation the term of office of Dr. Voelker did not expire July 1, 1935, unless there was some one not only elected but qualified to enter into and assume the duties of the office and, under the facts in this case, Dr. Elliott should be denied title to the office of superintendent of public instruction. I, therefore, concur in the result stated by Mr. Justice POTTER.

The late Justice NELSON SHARPE took no part in the decision of this case.